GEORGE T. BISHOP v. STATE OF MISSISSIPPI.

[52 South. 21.]

CRIMINAL LAW AND PROCEDURE. *Murder. Insanity. Evidence. Reasonable doubt. Confessions. Opinions.*

In a murder case, wherein the defense is insanity:—

(a) However horrible the crime, there is no responsibility for it if the accused were insane, or if the evidence raises a reasonable doubt as to his sanity; and

(b) The court should give defendant all latitude the law allows, rather than unduly restrict him, in the introduction of testimony; and

(c) A witness who had known defendant in his youth, had seen him frequently and known him intimately for many years, should be allowed to testify to his opinion as to whether he was sane or insane; and

(d) Where the state counts upon a confession, evidence of all that was said and done at the time the alleged confession was made is competent as going to show whether or not the confession was voluntary and whether defendant was sane or insane.

FROM the circuit court of Sunflower county.

HON. JAMES M. CASHIN, Judge.

Bishop, appellant, was indicted for the murder of one Hutchison, was convicted of murder, and sentenced to suffer death, and appealed to the supreme court.

The deceased was shot while sitting in his house, the bullet being fired through the window in the day time by some one from the outside of the house. Suspicion pointing to the appellant, he was arrested, and while in the custody of a deputy sheriff, Riddle, he is alleged to have confessed to committing the homicide. His conviction rested entirely upon circumstantial evidence and the alleged confession. The opinion of the court further states the facts.

*W. D. Watts,* for appellant.

The state's witness, Riddle, a deputy sheriff in charge of the prisoner, exercised unwarranted zeal in drawing the alleged confession from the prisoner, taking him to a room upstairs in the depot; asking him where he had been, and when appellant began to give an account of his movements, Riddle interrupted him and said that what had been stated would leave no doubt of his guilt. Riddle said in his testimony, "I told accused I was sorry for him." Now, viewing this testimony as a whole, one could arrive at no other conclusion than that the witness, Riddle, was hostile to appellant. Again, Riddle testified that he made no threats or promises, and that the confession was free and voluntary, but, he says, some one present might have made a promise or threat.

If it appears that the prisoner has not been left wholly free, and did not consider himself to be so, in what he was called upon to say, or did not feel himself at liberty wholly to decline any explanation or declaration whatever, the examination is not held to have been voluntary. 1 Greenleaf Ev. § 225.

In the face of the testimony in this case, does it not seem more like the "sweat-box process" than a free, deliberate, and voluntary confession?

Chief Justice Fuller, in delivering the opinion of the court in the case of *Wilson v. The United States,* 162 U. S. 621, said: "In short, the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement whatever."

The tests provided by the law to be applied to confessions are not entirely to insure the truth, as some have supposed, but there is a more humanitarian consideration, which the law has seen fit to throw around the mentally weak, that they may be on an equal footing with their more intelligent brethren, and this has been embodied in the fifth amendment to the United States Constitution, wherein it is said: "No person shall be compelled in any criminal case to be a witness against himself."

Constitutional provisions for the security of person and property should be liberally construed. *Boyd v. United States,* 116 U. S. 616.

If the facts as to which he is interrogated, form but one link in the chain of evidence, which is to convict him, he is protected from its consequences. And whether it may tend to incriminate or expose the witness, is a point upon which the court is bound to instruct-him; and which the court will determine under all circumstances of the case. 1 Greenleaf Ev. § 451.

The supreme court of Mississippi, speaking through Arnold, J., in the case of *Ellis v. State,* 65 Miss. 48, said: "If there is a reasonable doubt against it (confession) being free and voluntary, it should be excluded from the jury."

It is said that by the term "voluntary" is meant a proceeding from the spontaneous operation of the party's own mind, free from the influence of any extraneous disturbing cause. *People v. McMahon,* 15 N. Y. 384.

A party must be allowed to make his own calculations as to the advantages to be derived from confessing. *State v. Smith,* 72 Miss. 420.

In determining whether a confession was voluntary, the age, situation, experience, intelligence, character, and disposition of the accused, and the circumstances under which the confession was made are relevant. 12 Cyc. 480.

The court below refused to permit counsel for the defense to offer in evidence, the testimony of witnesses who had known appellant intimately for many years to show the mental condition of appellant. This was error. It seems to be well settled law that witnesses, though not experts, where they had had the opportunity to judge from close observation, may testify as to the sanity or insanity of the accused. 1 Wharton Ev. 451; *Wood v. State,* 58 Miss. 741.

If the confessions are introduced in evidence by the state, the accused who, under the statute, has the right to testify in his own behalf, should be allowed to explain his mental condition when he confessed. *Simmons v. State,* 61 Miss. 243. Then why should not evidence to show mental incapacity be admissible?

In the case of *Bram v. United States,* 168 U. S. 532, the words used by the police officer to the accused were conceded by the court to be neither a threat nor a promise, and yet the court reached the conclusion that there was sufficient in them to make any conviction or statement by the accused inadmissible. The testimony of the detective, because of the admission of which the supreme court of the United States, ordered a new trial, was as follows: "When Mr. Bram came into my office, I said to him: 'Bram, we are trying to unravel this horrible mystery; your position is rather an awkward one; I have had Brown in this office, and he made a statement that he saw you do the murder.' To which the accused answered, 'He could not have seen me, where was he?' I said: 'He states

that he was at the wheel.' 'Well', he said, 'he could not have seen me from there.' I said: 'Now look here, Bram, I am satisfied that you killed the captain from all that I have heard from Brown,' but, I said: 'some of us here think that you could not have done all that crime alone. If you had an accomplice, you should say so, and not have the blame of this horrible crime on your own shoulders.' He said: 'Well, I think, and many others on board the ship think, that Brown is the murderer; but I don't know anything about it.' "

*Vernon D. Rowe,* on the same side.

The conviction of appellant rests upon the so-called confession made to the witness Riddle. Appellant was on trial for his life, and it was clearly proved that he is a weak-minded idiotic, and half-witted man, and has been so regarded for many years; and for this reason alone, this confession should be received with the greatest degree of caution.

The mental weakness of the accused does not alone exclude his confession, although a confession by a weak-minded person is to be received with caution; but if the fact of mental incapacity was coupled with circumstances calculated to inspire fear, the confession is not admissible. 12 Cyc. 477.

In the first place the court below committed serious error when it permitted the witness Riddle to express his opinion as to whether the confession was voluntary. Riddle was introduced by the state, and testified that others were present in the room when the confession was alleged to have been made. One Felder testified that he was present when the confession was alleged to have been made but the court below erroneously held that he could not testify to just what was said and done. The truth is, there was really no confession, because of the fact that the appellant, a weak-minded man, was in the custody of officers who conducted him to a room and after locking the door repeatedly accused him of committing the crime. Now,

is it possible that this can be called the free and voluntary confession as demanded by the law? Riddle, the witness to whom the confession is alleged to have been made, was an officer of the law, and had appellant under arrest; he made statements to appellant, the purpose of which were to make appellant believe that he knew of the crime and believed him guilty. A confession made under such circumstances could never be called free and voluntary. It would have been inadmissible had Riddle been a private citizen, and it should be looked upon with disfavor because he was an officer. Not many confessions, made to officers, can stand the test of the law, because peace officers, many times, become over-zealous for convictions and therein they over-step the bounds of the law by almost invariably extorting statements from prisoners. Such official zeal has produced "sweat-box" confessions now generally regarded with disfavor and abhorrence by the courts.

The court below erred, therefore, when it permitted evidence to be introduced to prove the alleged confession without admitting evidence introduced for the purpose of denying it. *Dunmore v. State,* 86 Miss. 788.

*J. B. Stirling,* attorney-general, for appellee.

The record shows that appellant repeatedly stated that he killed deceased. The deputy sheriff, Riddle, who had appellant under arrest testified that appellant in his presence repeatedly admitted that he killed deceased. There is no evidence to show that any threat or coercion was used toward appellant to induce the confession, or that promise of assistance was made to him.

This court held in the case of *Cady v. State,* 44 Miss. 341, that "while confessions must be free and voluntary and not induced by the expectation of any advantage held out or promised nor extorted to escape harm or injury, * * * some

extraneous pressure in the one direction or the other must be proved in order to show that the confession was not involuntary."

In *White v. State,* 32 South. 139, an Alabama case, the witness saw defendant in jail and asked him why he committed the crime. Defendant then and there made certain incriminating admissions. The court held that the confession was voluntary, though defendant was under arrest and the questioner assumed his guilt. In *Meadows v. State,* 34 South. 183, another Alabama case, the prosecutor indicated to the defendant that he knew all the circumstances of the crime, and had sufficient evidence to convict him, whereupon defendant confessed to the crime and the admission, although objected to, was admitted; the appellate court holding that the confession was properly admitted and that it was voluntary. There is nothing in the record of the case at bar to show that the confession was not free and voluntary; on the contrary, the testimony of the witnesses shows that the appellant had repeatedly confessed the crime.

*Franklin & Wiley,* on the same side.

Nowhere does it appear that the deputy sheriff, Riddle, even accused appellant of having committed the crime. He merely told appellant that appellant had been seen by various witnesses in Doddsville and at Moorhead, and left appellant free to deny this or make any statement he saw fit and proper concerning the matter. And in this state there certainly devolves upon the deputy sheriff no duty to caution an accused person as to the consequences of making a confession. 12 Cyc. § 463.

It is not the duty of the police officer in the absence of a statute to caution a prisoner as to the consequences of making a statement, if the statement is voluntary, but merely to refrain from inducing him to make a statement. The officer in this case complied with the spirit of the rule just stated, but

he might have gone to the extent of questioning the prisoner as to his guilt and thus elicited the confession, and it then became admissible. 12 Cyc. 468; *White v. State,* 32 South. 139; *Sam v. State,* 33 Miss. 347.

A confession to be inadmissible because of fear must have been produced by something more than the fact that the accused has been charged with crime and has been arrested or taken into custody, or by the fear that he may be punished for the crime. 12 Cyc. 475. No such state of affairs existed in this case.

WHITFIELD, C. J., delivered the opinion of the court.

In the examination of the witness Riddle it was asked, "Didn't you, or some one present there [that is, when the confession was made in the upstairs room at the depot], at the time say it would be worse for him if he didn't come out with the clean thing and tell all about it?" to which the witness answered, "Some one might have told him; I don't remember telling him, and I don't remember any one telling him that. Some one might have done it; but I don't remember them. Q. You are not prepared to say it wasn't told him at the time? A. No, sir; I wouldn't swear about it." Now, there were in the upstairs room at the time of the alleged confession F. C. Felder, Riddle, Bishop, and Travis. Felder, on his examination, was asked the following question: "I will get you to state what took place—the conversation between you and Riddle and Bishop and Travis—up in that room at the depot at that time?" This question was objected to by the state, the objection sustained, and the ruling excepted to at the time by the defendant. This was manifestly error. All that was said and done in that room at the depot at the time of that confession was plainly competent as going to show, not only whether the confession was free and voluntary, but also to show whether the defendant was sane or insane. It might have been, we cannot tell, that Felder might have stated that some one, in that conversation, did

tell the defendant that it would be worse for him if he did not make a clean breast of it all, and it might have been that the conduct and declarations of the defendant at that time might have shed material light on the question of his sanity or insanity.

When the witness R. E. McBee was examined, he stated that he had known the subject of inquiry, the defendant, Bishop, for twenty-seven or twenty-eight years, and that he had seen him every day or so while he was young. He was then asked, after having thus stated that he had known him twenty-seven or twenty-eight years intimately, and had seen him every day or so while he was young, what he could say of Bishop's mental condition. This was objected to, the objection sustained, and the ruling excepted to. He was then asked if he had ever seen anything in the defendant to denote idiocy or insanity. This was objected to, the objection sustained, and the ruling excepted to. He was then asked this question, "I will ask you this, if from any conversations you have ever had with him, or his actions coming under your observation, they have formed any impression on you?" and this was objected to, the objection sustained, and the ruling excepted to by the defendant. The witness was allowed to answer that he thought time and again that the defendant was not bright. These questions were then asked: "Well, what led you to believe that he was in that condition?" This was objected to, the objection sustained, and the ruling excepted to by the defendant. He was then asked, finally, in an effort to get from this witness, who had known the subject of inquiry intimately for twenty-seven or twenty-eight years, and must, of course, from that long acquaintanceship, have many times observed his conduct and noted his declarations: "What do you mean by his not being bright? You say you have always thought that he wasn't bright. What do you mean by that?" And this was objected to, and the objection sustained, and the ruling of the court excepted to.

It must be borne in mind that insanity was the defense offered. These rulings of the court were all erroneous. They restricted the right of defendant to show, if he could show, that he was insane, within far too narrow limits. Surely a witness who states that he had known the subject of inquiry while he was young, and had seen him while he was young every day or so, and had known him intimately for twenty-seven or twenty-eight years would be pre-eminently qualified to testify, from the observations he must necessarily have made of the conduct and declarations of the defendant, whether from such acts and declarations the defendant was, in his opinion, sane or insane.

The crime here is a peculiarly horrible one. Whoever committed the deed should be hanged, if convicted after a fair trial according to the law of the land. But if the evidence in the case should show that the defendant was insane at the time of the commission of the alleged offense, or should even raise a reasonable doubt as to his sanity at that time, all the law everywhere is, however horrible the crime, there would, in such case, be no responsibility for it. There is very little danger, in cases of plain, cold-blooded assassination, such as this was, that there will be any miscarriage of justice in the court, if the court should allow the defendant the full latitude he is clearly entitled to under the law in making competent proof as to his sanity or insanity. The state of the public mind in cases of such horrible assassinations is warrant that the defendant would be duly convicted, even when allowed the largest latitude which the law allows him. It is far wiser, therefore, on the part of the circuit judges, in cases so peculiarly horrible, to give the defendant all latitude the law allows, rather than to restrict him unduly and too narrowly in the introduction of competent testimony.

For the errors indicated, the judgment is reversed, and the cause remanded.          *Reversed.*