KEELER *v.* STATE

No. 40024 December 19, 1955 84 So. 2d 153

*Allan Edwards,* Jackson, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

HOLMES, J.

The appellant was indicted and tried in the Circuit Court of the First Judicial District of Hinds County for the murder of Louis Hutchins, a merchant who

operated a men's clothing store on North Farish Street in the City of Jackson. He confessed the killing, but entered a plea of not guilty by reason of insanity. No point was made that he was insane at the time of the trial, and he so informed the court through his counsel at the outset of the trial. His sole defense was that he was insane at the time of the commission of the act to the extent that he was unable to appreciate the nature of his act and to distinguish between right and wrong. The jury found him guilty as charged, and he was sentenced to suffer the penalty of death. From the judgment of conviction, he prosecutes this appeal.

The only issue presented on this appeal is whether or not the appellant, at the time he killed the deceased, possessed the mental capacity to understand and appreciate the nature of his act and to distinguish between right and wrong. In view of the single issue presented we need state only generally the facts as disclosed by the undisputed evidence.

On the morning of January 28, 1955, the deceased was alone in his store. The appellant entered, and after some preliminary conversation with the deceased about the purchase of a suit of clothes and a pair of shoes, violently assaulted the deceased, knocking him down and unmercifully beating him and kicking him about the head and face, and smashing his head against the concrete floor, rendering his face and head a bloody mass of wounds, bruises, and lacerations, some of which extended to the skull bone, causing areas of hemorrhage in the brain, and resulting in his immediate death. The appellant then dragged the body of the deceased to the back of the store, leaving a trail of blood on the floor. He left the lifeless form of the deceased on the floor with his head and one hand close to a gas heater which was burning full blast. The offensive odor of burning hair and burning flesh was detected by the first person who thereafter entered the store and discovered the crime.

Appellant's hands, trousers and shoes were bespatter-ed with blood. He went into the washroom of the store and washed his hands. He then took all of the paper money out of the cash drawer and removed the de-ceased's wallet from his pocket, later taking the money from the wallet and throwing the wallet in a trash can. He took from the store a pair of rust colored pants, a pair of shoes, and an overcoat. He put the overcoat on as he left the store to conceal the blood on his cloth-ing. He returned to his place of employment and changed his trousers and washed the blood from his shoes. He threw his bloody clothing in a trash bin. Later, when he went home to lunch, he changed his socks, which were also bloody. The coat and shoes were later found in the appellant's room. Some six months later, when he was arrested as a suspect in connection with other offenses which the police were investigating, he made a free and voluntary confession of the crime, relating it in the minutest details. He later went with the police to the scene of the crime and reenacted it. The next day he repeated his confession in the presence of witnesses of known integrity and veracity.

No preliminary proof was taken on the question of the appellant's sanity or insanity. As heretofore stated, he announced to the court that no point was being made that he was insane at the time of the trial. His trial commenced, therefore, with the presumption that he was sane. Waycaster v. State, 185 Miss. 25, 187 So. 205.

In Williams v. State, 205 Miss. 515, 39 So. 2d 3, the Court, speaking of the presumption of sanity, said: "It is also true that this presumption of sanity will be suf-ficient to sustain the burden resting on the state of proof of sanity on the part of the defendant at the time of the commission of the act charged, if defendant offers no testimony to meet the presumption sufficient to raise, out of the evidence in the case, a reasonable doubt of the defendant's sanity at the time he committed the act."

In Cunningham v. State 56 Miss. 269, the Court also said: ''Every man is presumed to be sane, and, in the absence of testimony not engendering a reasonable doubt of sanity, no evidence on the subject need be offered; but whenever the question of sanity is raised and put in issue by such facts, proven on either side, as engender such doubt, it devolves upon the State to remove it and to establish the sanity of the prisoner to the satisfaction of the jury beyond all reasonable doubt arising out of the evidence in the case.''

To meet the presumption of appellant's sanity at the time of the commission of the act charged, the appellant offered and introduced the testimony of his stepmother, Lelia Keeler, his father, Ernest Keeler, and four other witnesses who were acquaintances of the appellant. These witnesses, with the exception of Cleveland O'Bannon, testified that in their opinion the appellant was insane. They based their opinion upon the fact that the appellant, after his return from Parchman where he was serving a sentence and from which he was on parole, appeared absent-minded and queer, and was unresponsive when attempts were made to engage him in conversation. One of these witnesses, William Lowe, said that he thought that the appellant knew the difference between right and wrong. The witness Cleveland O'Bannon expressed no opinion as to the sanity or insanity of the appellant.

On the other hand, and in rebuttal of the testimony introduced by the appellant, the state offered in evidence the testimony of W. L. Laws, a trusted employee at the New Capitol Building for many years, Detective M. B. Pierce, connected with the Police Department of the City of Jackson, Mrs. J. H. Dodds, a case worker for the Department of Public Welfare and under whose observation the appellant came as a parolee, and John A. Payne, Chairman of the State Parole Board. These wit-

nesses testified that they had frequent occasion to observe and talk to the appellant, some of them seeing him daily, and that in their opinion he was sane and mentally capable of distinguishing between right and wrong.

 █ Further evidence that the appellant possessed the mental capacity to distinguish between right and wrong is the fact that the appellant, after his commission of the act, undertook to conceal the blood on his clothing and thereby conceal his connection with the crime. It was not necessary that the State prove that the appellant was wholly sane at the time of the commission of the act but only that he was mentally capable of understanding and appreciating the nature of his act and of distinguishing between right and wrong. In the case of Bovard v. State, 30 Miss. 600, it was held that: "A person although partially insane will not be excused from responsibility if he have reason and capacities sufficient to distinguish between right and wrong as the particular act he is doing, and to know that it is criminal and will subject him to punishment."

In the case of Eatman v. State, 169 Miss. 295, 153 So. 381, the Court said: "In this State, as generally in the several states, the rule of law is that the test of criminal responsibility is the ability of the accused, at the time he committed the act, to realize and appreciate the nature and quality thereof—his ability to distinguish right and wrong."

Again in the case of Smith v. State, 95 Miss. 786, 49 So. 945, the Court said: "Where the defense is insanity, total or partial, the test of defendant's criminal responsibility is his ability at the time he committed the act to realize and appreciate the nature and quality thereof—his ability to distinguish right and wrong.... and the test is the same where the defense is that the act was the result of an uncontrollable impulse caused by any species of insanity."

■ ■ The appellant contends, however, that the State's witnesses were lay witnesses, or non-expert witnesses, and that the testimony of such witnesses is insufficient to form the basis for the jury's determination of the appellant's sanity at the time of the commission of the act. In other words, it is the contention of the appellant that the State should be required to prove the sanity of an accused by expert witnesses, such as doctors or psychiatrists, in order that the jury might be afforded a proper basis for the determination of the sanity of the accused. Such is not in accord with the authorities generally, and the decisions of this court, and this the appellant frankly admits.

In 23 C.J.S., Criminal Law, page 78, we find the following: "An opinion as to the sanity, insanity, or other condition of another person may be stated by a non-expert witness who has had an acquaintance and association with such person of such character and duration as to afford adequate opportunity for observing him and forming an opinion as to his mental condition."

■ ■ It is well established under our own decisions that the opinion of a non-expert witness as to the sanity or insanity of an accused is admissible when accompanied by a statement of the specific facts on which it is based. Baird v. State, 146 Miss. 547, 112 So. 705; Bishop v. State, 96 Miss. 846, 52 So. 21.

Accordingly, we find no merit in this contention of the appellant, and further, the inconsistency of appellant's position is readily apparent when it is observed that the appellant relies upon lay witnesses to prove his claimed insanity, and at the same time, argues that the testimony of lay witnesses is insufficient to establish his sanity.

■ ■ The testimony in the case created an issue for the jury on the question of the sanity or insanity of the appellant at the time of the commission of the act. This issue was submitted to the jury under proper in-

structions. The jury resolved this issue in favor of the State and it is inconceivable to us that the jury could have done otherwise under the evidence.

The record in this case discloses that the appellant is guilty of a brutal and atrocious murder, and that by his brutality he has demonstrated that he is a menace to society. The jury has so found and has exacted the supreme penalty. The record further discloses that appellant was provided with able counsel to present his defense, and was afforded a fair trial before a fair and impartial jury, and that his every legal right was safeguarded. We can find no error in the record of the proceedings, and no grounds justifying our disturbance of the jury's verdict. The judgment of the court below is therefore affirmed and Friday, January 27, 1956, is hereby fixed as the date for the appellant's execution in the manner provided by law.

Affirmed and Friday, January 27, 1956, fixed as the date for appellant's execution.

*McGehee*, C.J., and *Roberds, Hall, Lee, Kyle, Arrington*, and *Gillespie*, JJ., concur. *Ethridge*, J. took no part.