361 So.2d 61 (1978)
Johnny Lewis WASHINGTON
v.
STATE of Mississippi.
No. 50401.
Supreme Court of Mississippi.
July 12, 1978.
*62 C. Darrell Reeves, Columbus, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Special Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
ROBERTSON, Presiding Justice, for the Court:
Johnny Lewis Washington was indicted, and tried on May 24, 25 and 26, 1977, in the Circuit Court of Lowndes County, Mississippi, for the capital murder of J.K. Woods.
A bifurcated trial was conducted in accordance with the provisions of Mississippi Code Annotated sections 99-19-101 and 99-19-103 (Supp. 1977), which laws were enacted by the Mississippi Legislature after carefully studying and analyzing Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), and went into effect on April 13, 1977.
At the conclusion of the guilt phase of the trial, the jury returned a unanimous verdict of "guilty of capital murder." Thereupon a separate sentencing proceeding was conducted strictly in accordance with the provisions of Sections 99-19-101 and 99-19-103, before the same trial jury.
The trial jury returned this verdict:
"We the jury unanimously find that the aggravating circumstances of one, the capital murder was committed while the defendant Johnny Lewis Washington was engaged in the commission of the crime of robbery; two, the defendant Johnny Lewis Washington committed the capital murder in an especially heinous, atrocious, or cruel manner are sufficient to impose the death penalty. That there are unsufficient mitigating circumstances to outweigh the aggravating circumstances. And we unanimously find that the defendant should suffer death."
In accordance with the unanimous jury verdict, the court sentenced the defendant to suffer death by lethal gas on July 8, 1977. After appeal was perfected, execution was suspended.
The indictment recited in part:
"That JOHNNY LEWIS WASHINGTON late of the County aforesaid, on OR ABOUT the 26TH day of MARCH in the year of our Lord, 1977, did then and there wilfully, unlawfully, feloniously and of HIS malice aforethought kill and murder a human being, J.K. WOODS, WITHOUT AUTHORITY AT LAW AND NOT IN NECESSARY SELF-DEFENSE WHILE HE, THE SAID JOHNNY LEWIS WASHINGTON WAS THEN AND THERE ENGAGED IN THE COMMISSION OF THE CRIME OF ARMED ROBBERY IN VIOLATION OF SECTION 97-3-19(2)(E) OF THE MISSISSIPPI CODE ANNOTATED, 1972, . ."
Mississippi Code Annotated section 97-3-19 (Supp. 1977), provides in pertinent part:

*63 "(2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases:
.....
"(e) When done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson or robbery, or in any attempt to commit such felonies;"
Woods Quick Pick, a Columbus, Mississippi, convenience store, was robbed on the night of March 26, 1977, by two men armed with shotguns and wearing stocking masks. During the robbery, one of the bandits, later identified as Johnny Lewis Washington, at close range shot J.K. Woods, the proprietor of the store, in the stomach with a long-barrel shotgun loaded with buckshot. Woods died about five hours later in a Columbus hospital.
Booker T. Cole, Jr. testified that between 7:30 and 8:00 P.M. on March 26, 1977, Johnny Washington contacted him and told him to come by his house because "he had something up". Some time later, when Cole arrived at Washington's house, the defendant told Cole that they were going to rob a Quick Pick. Washington provided Cole with a stocking mask and a sawed-off shotgun, and they took up their station across the street from Woods Quick Pick. After assembling and loading their shotguns, when the coast was clear they ran across the street and into Woods Quick Pick store. J.K. Woods, owner of the store, Roy Thompson, an employee, and a female employee, Elouise Clark, were in the store.
Cole and Washington pointed their shotguns at Woods and Thompson, and told them to open the cash registers and "give us the money". Thompson began to put the money from the first cash register into a brown paper sack. Cole, the smaller and younger of the two robbers, found a bank sack of money in a cabinet drawer, and he fled with that sack.
Washington, in the meantime, ordered Woods to put the money from the second cash register into the same paper sack that Thompson had put the money from the first cash register. Woods misunderstood and reached for another paper sack, whereupon, according to the testimony of Thompson, Washington hit Woods over the head with the gun barrel "just as hard as he could". In falling, Woods knocked Thompson's sack of money off on the floor. Thompson told Washington that Woods had been drinking and to let him sack the money. Washington told Thompson not to move and placed the shotgun about 8 inches from Thompson's head. Woods went ahead and picked up the sack and sacked the money from the second cash register.
As Woods handed Washington the sack in one hand, he reached for the gun barrel with the other, but missed, and Washington kept the gun on Woods as he, Washington, backed toward the door. Woods moved very slowly toward Washington. Just before he left, Washington fired his shotgun into Woods' stomach. Washington reloaded his shotgun and left. Thompson testified that Washington and Woods were about 10 feet apart when Washington fired, and that Washington could very easily have made his exit with his sack of money without shooting Woods.
Cole testified that he was a short distance away when he heard the shot, and Washington came running out of the store telling Cole that he had shot Woods. Cole testified that later that night, about 12:30 or 1:00 A.M., they got together and divided the money (about $600) between them.
Washington's defense was that he was at a party, was not at Woods Quick Pick, did not commit the robbery, nor did he kill Woods. Several people at the party testified that Washington did not arrive there until around midnight, and no witness testified that Washington was there from 10:00 to 10:30 P.M.
Ben Hodo of Ethelsville, Alabama, was visiting his grandmother in Columbus, Mississippi, on the night of the robbery. He testified that around 10:00 P.M., as he was going down to Lee's Restaurant to get something to eat, he saw a man in an alley *64 next to Woods Quick Pick with a long gun and a sack of money. Hodo testified that he and the man with the long gun looked at each other about 10 seconds and that they were close together. He positively identified Washington as the one he saw in the alley with the sack of money and long gun.
After a full trial (the Record on the guilt phase consisting of 308 pages in two volumes), the jury returned a verdict of guilty of capital murder.
Before the same jury, the court then took evidence in aggravation and mitigation. Eyewitness Thompson testified in aggravation that Washington hit Woods with the gun barrel as hard as he could; that "He should have knocked him out looked like." Thompson further testified:
"Q Do you know of any other reason why Mr. Woods was killed?
A No, sir, I don't. He had the money and he had backed all the way to the door. And I thought sure he was just going to back on out. But he backed to the door and then pulled the trigger.
Q What did he do after he had shot?
A He stood there and reloaded his gun. And that is when I thought he was going to turn and shoot me."
On cross-examination, Thompson answered that Woods had been drinking and when asked about whether Mr. Woods was advancing on Washington, Thompson said:
"And Mr. Woods, he was traveling slower than the boy with the gun. He could have backed. He backed to the door and could have backed right on out. Mr. Woods couldn't have got nowhere close to him."
In mitigation, Washington testified that he was 23 years old, that, while he had been living with a lady for about five years, he was not married but had a three-year-old daughter by her. When asked by his counsel whether he had ever been convicted of a crime, Washington replied that he had been convicted of a "marijuana crime that same year" for which he had paid a $400 fine.
In strict compliance with the provisions of Section 99-19-101, supra, before the jury retired to consider the sentence, the court gave this instruction:
INSTRUCTION C-20
You have found the defendant guilty of the crime of capital murder. You must now decide whether the defendant will be sentenced to death or to life imprisonment. In reaching your decision, you must objectively consider the detailed circumstances of the offense for which the defendant was convicted, and the defendant himself.
To return the death penalty, you must find that aggravating circumstances  those which tend to warrant the death penalty  outweigh the mitigating circumstances  those which tend to warrant the less severe penalty.
Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
(1) The capital murder was committed while the defendant, Johnny Lewis Washington, was engaged in the commission of the crime of robbery.
(2) The defendant, Johnny Lewis Washington, committed the capital murder in an especially heinous, atrocious or cruel manner.
You must unanimously find, beyond a reasonable doubt, that one or more of the preceding aggravating circumstances exists in this case to return the death penalty. If none of those elements are found to exist, the death penalty may not be imposed, and you shall write the following verdict on a sheet of paper:
"We, the jury, find that the defendant should be sentenced to life imprisonment."
If one or more of those elements of aggravation is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstances. Consider the following elements of mitigation in determining whether the death penalty should not be imposed:
(1) That the defendant has no significant history of prior criminal activity.
(2) The defendant's age at the time of the capital murder.

*65 If you unanimously find from the evidence that one or more of the preceding elements of mitigation exists, then you must consider whether it outweighs the aggravating circumstances you previously found, and you must return one of the following verdicts. The verdict you return must be written on a separate sheet of paper.
(1) "We the jury, unanimously find that the aggravating circumstance(s) of:
_______________________________________________
_______________________________________________
_______________________________________________
is sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstance(s), and we unanimously find that the defendant should suffer death.
 ____________________
 Foreman of the Jury"
(2) "We, the jury, find that the defendant should be sentenced to life imprisonment."
(3) "The jury has been unable to agree unanimously on punishment."
The jury returned this verdict:
"We the jury unanimously find that the aggravating circumstances of one, the capital murder was committed while the defendant Johnny Lewis Washington was engaged in the commission of the crime of robbery; two, the defendant Johnny Lewis Washington committed the capital murder in an especially heinous, atrocious, or cruel manner are sufficient to impose the death penalty. That there are insufficient mitigating circumstances to outweigh the aggravating circumstances. And we unanimously find that the defendant should suffer death. S.E. Nolen, Foreman of the Jury."
Appellant assigns these two errors:
(1) Section 99-19-101(5)(h) of the Mississippi Code of 1972 is unconstitutionally vague.
(2) The imposition of the death penalty is unconstitutional per se.
Mississippi Code Annotated section 99-19-101(5) (Supp. 1977) lists eight aggravating circumstances which may be considered by the jury. (5)(h) provides:
"The capital offense was especially heinous, atrocious or cruel."
The appellant contends that the language of (5)(h) is unconstitutionally vague. We do not agree.
We must remember that the twelve members of the trial jury were a jury of the defendant's peers, and came from the county of the defendant's residence. The jury was composed of average citizens possessing average intelligence, a cross-section, if you please, of the citizenry of the community. In our opinion the words "especially heinous, atrocious or cruel" are not confusing nor likely to be misunderstood by the average citizen. The average citizen has a reasonable knowledge of the generally accepted meaning of these words. He comes in contact with these words frequently, if not in personal conversation at least through the news media of television, radio or the press.
We think this language from Gregg v. Georgia, supra, sheds light on the confidence we must place in the average contemporary jury to correctly interpret words which of necessity must be general when placed in statutes:
"Jury sentencing has been considered desirable in capital cases in order `to maintain a link between contemporary community values and the penal system  a link without which the determination of punishment could hardly reflect "the evolving standards of decency that mark the progress of a maturing society."' Witherspoon v. Illinois, 391 U.S. [510], at 519 n. 15, 88 S.Ct. [1770], at 1775 n. 15 [20 L.Ed.2d 776 (1968)], quoting Trop v. Dulles, 356 U.S. [86], at 101, 78 S.Ct. [590], at 598 [2 L.Ed.2d 630 (1958)] (plurality opinion)." 428 U.S. at 190, 96 S.Ct. at 2933, 49 L.Ed.2d at 884.
The facts in no two cases are exactly identical and no precise definition or formula can be made to cover every possible factual situation.
*66 It is our considered opinion that the average jury in its sound discretion and judgment understands the generally accepted meaning of the words "especially heinous, atrocious or cruel" and is able to apply these words to different factual situations without further definition of these words.
It is our opinion that these words are not unconstitutionally vague.
The second assignment of error, that the imposition of the death penalty is unconstitutional per se, was fully answered adversely to the contentions of the appellant by the Supreme Court of the United States in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).
There is no merit in this second assignment of error.
Mississippi Code Annotated section 99-19-105 (Supp. 1977), requires of this Court a very careful, painstaking and meaningful appellate review of each case wherein the death penalty is imposed:
"(1) Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the sentence shall be reviewed on the record by the Mississippi Supreme Court... .
(2) The Mississippi Supreme Court shall consider the punishment as well as any errors enumerated by way of appeal.
(3) With regard to the sentence, the court shall determine:
(a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in section 99-19-101; and
(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
(4) Both the defendant and the state shall have the right to submit briefs within the time provided by the court, and to present oral argument to the court.
(5) The court shall include in its decision a reference to those similar cases which it took into consideration ..."
Both the defendant and the state submitted well-prepared, thorough and excellent briefs and this Court, sitting en banc, heard able oral arguments from defense counsel and the State. In addition, this Court has carefully studied the 365-page two-volume record, as well as the four legal page single-spaced report of the trial judge on the standard questionnaire form prepared and supplied by this Court.
This Court has also carefully and maturely considered the punishment (the death penalty), in addition to the two assignments of error so ably argued and briefed by defense counsel.
This Court is of the unanimous opinion, and now determines that:
(a) The sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) The evidence fully supports the jury's unanimous finding of not one, but two aggravating circumstances enumerated in section 99-19-101(5);
(c) The sentence of death is not excessive or disproportionate to the penalty imposed in similar cases considering both the crime and the defendant.
Although Mississippi Code Annotated section 99-19-103 (Supp. 1977) mandatorily requires that only one of the eight statutory aggravating circumstances enumerated in section 99-19-101 be found by the sentencing jury, the jury in the case at bar unanimously found that these two aggravating circumstances existed:

*67 "(d) The capital offense was committed while the defendant was engaged . . in the commission of ... robbery, ..." and
"(h) The capital offense was especially heinous, atrocious or cruel."
In considering whether the sentence of death was "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant," we first compared the case at bar with the only capital murder case reaching us after Gregg v. Georgia, supra. That case was Bell v. State of Mississippi, 360 So.2d 1206, affirmed by us on May 24, 1978. Bell also was an armed robbery case where the robbery had been successfully completed and the killing afterward was wanton and useless and utterly unnecessary.
In Bell, we said:
"The remaining twenty cases in which the death sentence was affirmed were for the crime of murder. Of that twenty, three involved the murder of an inmate by another inmate at the state penitentiary, two involved the murder of police officers, eight are murders with various aggravating circumstances and most significantly, seven of the cases involved murder in which the aggravating circumstance of robbery or burglary was present. Anderson v. State, 246 Miss. 821, 152 So.2d 702 (1963); Simmons v. State, 241 Miss. 481, 130 So.2d 860 (1961); Thompson v. State, 231 Miss. 624, 97 So.2d 227 (1957); Jones v. State, 228 Miss. 458, 88 So.2d 91 (1956); Keeler v. State, 226 Miss. 199, 84 So.2d 153 (1955); Gilmore v. State, 225 Miss. 173, 82 So.2d 838 (1955); Lewis v. State, 222 Miss. 140, 75 So.2d 448 (1954).
.....
"We also note that while no death sentences have been affirmed in this Court since 1964, other jurisdictions have recently considered similar cases and have approved the penalty imposed. Richmond v. State, 114 Ariz. 186, 560 P.2d 41 (1976), cert. den'd, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977) [murder armed robbery]; Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. den'd, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977) [murder armed robbery]; Harris v. State, 237 Ga. 718, 230 S.E.2d 1 (1976) [Execution style murder], cert. den'd, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 251 (1977); Floyd v. State, 233 Ga. 280, 210 S.E.2d 810 (1974), cert. den'd, 431 U.S. 949, 97 S.Ct. 2667, 53 L.Ed.2d 266 (1977) [murder armed robbery]; Gholson v. State, 542 S.W.2d 395 (Tex.Cr.App. 1976), cert. den'd, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977) [murder armed robbery]."
The jury had before it this evidence: The killing was committed during the commission of an armed robbery. Prior to killing Woods, the defendant struck the victim over the head with a long barrel shotgun with much force. The defendant, with a bag full of money, had reached the door and could have easily left without any danger to himself, yet he fired a load of buckshot at close range into the stomach of Woods, causing a massive wound from which there was no chance of recovery. It was an especially wanton, willful, useless and cruel killing.
In Lockett v. State of Ohio, ___ U.S. ___, 98 S.Ct. 2954, 2967, 57 L.Ed.2d 973 (1978), the Supreme Court of the United States held that, because the Ohio statute limited the mitigating circumstances that could be considered to the three mitigating circumstances listed in the statute, this particular statute was unconstitutional. The Court said:
"[This] limited range of mitigating circumstances which may be considered by the sentencer under the Ohio statute is incompatible with the Eighth and Fourteenth Amendments. To meet constitutional requirements, a death penalty statute must not preclude consideration of relevant mitigating factors." (Emphasis added).
Lockett bears no resemblance to Washington.
Section 99-19-101 supra, after providing for a separate sentencing proceeding, provides:

*68 "In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence, and shall include matters relating to any of the aggravating or mitigating circumstances." (Emphasis added).
This section then goes on to enumerate seven different kinds of mitigating circumstances that could be considered by the sentencing jury.
In Jackson v. State of Mississippi, 337 So.2d 1242 (Miss. 1976), this Court said:
"At this hearing, the defendant may prove his lack of a prior criminal record as a mitigating circumstance and may also adduce proof of any other circumstance or combination of circumstances surrounding his life and character or the commission of the offense with which he is charged that would be reasonably relevant to the question of whether he should suffer death or be sentenced to life in prison." (Emphasis added).
It is crystal clear from our holding in Jackson that this Court is committed to the "individualized consideration of mitigating factors" in each case, and that the only limitation placed on the introduction of evidence of mitigating circumstances is that it must be reasonably relevant.
At the separate sentencing proceeding the defendant only presented evidence of these two mitigating circumstances: That he was 23 years old and had no prior significant history of criminal activity.
The jury carefully weighed these mitigating circumstances and found that these were insufficient mitigating circumstances to outweigh the two aggravating circumstances, and returned a unanimous verdict that the defendant should suffer death.
In our unanimous opinion the verdict of the jury was fully and amply supported by the evidence adduced.
The conviction of capital murder and the sentence to death are, therefore, affirmed, and Thursday, the 24th of August, 1978, is set as the date for the execution of the sentence and the infliction of the death penalty in the manner provided by law.
AFFIRMED AND THURSDAY, AUGUST 24, 1978, SET FOR DATE OF EXECUTION OF DEATH SENTENCE.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.