812 So.2d 1109 (2002)
Oscar TOWNER a/k/a Oscar Haven Towner, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00273-COA.
Court of Appeals of Mississippi.
January 15, 2002.
Rehearing Denied April 2, 2002.
*1110 Lisa D. Collums, Gulfport, Attorney for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. Oscar Haven Towner was convicted on two counts of armed robbery. On appeal he alleges prosecutorial misconduct, multiplicity errors in the indictment, ineffective assistance of counsel, and inadequacy of the evidence. We find no error and affirm.

FACTS
¶ 2. Near midnight on November 15, 1998, one masked man committed a robbery at Toucan's restaurant, located in Gulfport. Both an employee and one of the owners would ultimately be confronted by the robber. Donna McMurtray was the employee. She testified that she was in the kitchen area when she first saw an intruder. He ordered her at gunpoint to come to where he was standing. He grabbed her throat and placed a gun to her head. The assailant threatened to kill *1111 her if she did not cooperate. While this was occurring, the restaurants's co-owner Jennifer Larson walked into the encounter. Larson was told to be quiet and open the office door.
¶ 3. The man forced Larson and McMurtray into the office. There he demanded the money that was lying on the desk, the money in a register drawer, two money bags, a surveillance video tape, and the keys to the office door. Larson complied with all of these demands. The robber smashed the telephone and fax machine, then locked the two women in the office. Larson then used the cell phone in her purse to call the police.
¶ 4. About $2,000 was taken. Both witnesses described the robber as a black male, with a bulky build, perhaps five feet, six inches tall, and wearing dark camouflage pants and a dark colored jacket.
¶ 5. Terry Davis was an officer with the Gulfport Police Department who was on patrol the night of the robbery. He testified that he and a second patrolman heard the report of the robbery and decided to patrol the Turnkey subdivision to look for someone matching the robber's description. They saw a gray Nissan with two black males parked in front of an apartment. Officer Davis parked his patrol car and observed the driver of the vehicle walk up to an apartment door and start knocking in a frantic manner. Officer Davis exited his vehicle and ordered the man to come over to him. The man looked back at Davis but continued knocking on the door. He was wearing camouflage pants and a white t-shirt. Soon thereafter the other man who had been in the Nissan also walked up to the apartment door. Davis testified that this man was wearing a dark colored jacket and a pair of dark colored pants.
¶ 6. Davis called the police dispatcher to say that he had two suspects who matched the physical description of the person who committed the Toucan robbery. When the two men at the apartment door heard Davis contact the dispatcher, both started running. Officer Davis pursued on foot. One of the suspects ran to the rear of a house in the subdivision. A search of this area revealed a person later identified as the defendant, Oscar Towner, hiding in a small building that contained a washer and dryer. Davis found Towner leaning against the wall of the building and sweating profusely. He had over $1,300 in his possession. A search of the interior of the building revealed money in a washing machine and in the general area where Towner was apprehended. Towner was then wearing a black tank top and dark colored pants. A subsequent search discovered the black jacket that Towner had been wearing when Officer Davis first saw him exiting the vehicle.
¶ 7. Towner was indicted, tried and found guilty on two counts of armed robbery. He was sentenced as a habitual offender to serve two concurrent twenty year terms.

DISCUSSION

I. The cross-examination of Towner and Sylvia Jackson
¶ 8. Towner testified that, at the time of the robbery, he was home alone after taking his wife to work. On appeal he alleges that the prosecutor asked him and his sister, Sylvia Jackson, questions that improperly inferred that the statement Towner's wife had given police was inconsistent with Towner's courtroom testimony. Such a statement from Towner's wife was never introduced into evidence. The principal argument is that the testimony given by Towner and his sister were discredited by innuendo and not by evidence.
*1112 ¶ 9. This is the exchange between Towner and the prosecutor.
Q: Now, you stated that you had taken your wife to work earlier that day?
A: Yes, sir, I have. She have work at Domino's.
Q: Wasn't she at home at the time you left to go get your children?
A: No, sir, she wasn't.
Q: She wasn't?
A: No. She went to work at Domino's. On Saturday they close about 2:00 in the morning.
Q: Okay. Were you present when she gave a statement to the police?
A: No sir, I wasn't. I was locked up in Harrison County.
Q: Do you know what she told them?
A: No, sir, I do not.
Q: You haven't discussed with her what she told them?
A: No, sir, I did not.
. . .
Q: You[r] kids weren't already at home?
A: No, sir.
Q: And your wife wasn't at home?
A: No, sir.
Q: You don't know that she told the police that or not, do you?
A: No, sir
¶ 10. Sylvia Jackson, who was Towner's sister, also was asked about Towner's wife.
Q: When you talked to her the next morning, did she tell you she was at home?
A: No. She told me she was at work.
Q: Did she tell you she talked to the police?
A: No, sir
Q: You never talked to her about what she told the police?
A: No, sir.
¶ 11. The initial obstacle for our review is that no objection to these questions was made. An objection gives the trial court an opportunity to consider whether erroneous questions are being posed and if so, to stop further inquiry and attempt to prevent any prejudice from arising by giving admonitions to the jurors. Sullivan v. State, 749 So.2d 983, 990 (Miss.1999). It is normally too late to raise the issues for the first time on appeal.
¶ 12. One exception to this general rule is that if the error fundamentally deprives the defendant of a fair trial, it may be reviewed regardless of whether a contemporaneous objection was made at trial. Johns v. State, 592 So.2d 86, 90 (Miss. 1991). Also, because of the seriousness of the impact on the integrity of the criminal justice system, the Supreme Court has noted that in "cases of prosecutorial misconduct... this Court has not been constrained from considering the merits of the alleged prejudice by the fact that objections were made and sustained, or that no objections were made." Mickell v. State, 735 So.2d 1031, 1035 (Miss.1999). Towner argues that misconduct occurred.
¶ 13. In Mickell, the prosecutor was found to have engaged in misconduct during cross-examination by asking the defendant, being tried for armed robbery, about his alleged attempted to sell a gun to someone on the same day as the crime. Mickell, 735 So.2d at 1035. No effort was ever made at trial to lay a foundation for that question. Id. at 1034-35. This use of an unproven allegation to discredit the accused led to reversal of his conviction even in the absence of his attorney's objection. Id. at 1036.
¶ 14. Towner argues that the same defect exists here. Whatever the State was trying to show, all the jury heard were *1113 questions about whether the witnesses knew what Towner's wife had told the police. It appears that the prosecutor did not believe that Towner and his wife had ever actually been married. The prosecutor at an earlier stage described Connie Sullivan as Towner's girlfriend or common law wife, the latter being a status no longer constituting a valid marriage in Mississippi. Miss.Code Ann. § 93-1-15 (Rev. 1994). The State's plan to call Sullivan to rebut the testimony of Towner and his sister, though, was thwarted by events that were described outside the presence of the jury. The prosecutor discovered after the disputed cross-examinations that Towner and Sullivan had been married in 1998. Sullivan therefore could not testify against her husband without the consent of both spouses. M.R.E. 601(a).
¶ 15. We find no actual misconduct even though the State ultimately was unable to complete its planned use of Sullivan's testimony. We also do not find that the ambiguous line of questions asked these witnesses by the State created the kind of unfair prejudice that led to reversal in Mickell. We reject the allegation of error.

II. Multiplicity
¶ 16. Towner was indicted on two counts of armed robbery. Each count charged that on the same date in 1998 Towner took the same $2,507 from both Jennifer Larson and Donna McMurtray. These were the two women who both were present in the office from which the money was taken. Towner contends that since the property taken from each victim was the identical property, that there can be only one robbery. He calls this a multiplicity problem.
¶ 17. Multiplicity is the "practice of charging the commission of a single offense in several counts. This practice is prohibited because single wrongful act cannot furnish basis for more than one criminal prosecution." BLACK'S LAW DICTIONARY 1016 (6th ed.1990). Towner is arguing in effect that this was one robbery, allegedly against the co-owner of the restaurant since she had a greater claim to the stolen money than would the employee.
¶ 18. First, it is not relevant whether the potential victim of a robbery has ownership of the property taken. That is shown in the statutory definition of robbery:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery.
Miss.Code Ann. § 97-3-79 (Rev.2000) (emphasis added).
¶ 19. We look at the importance for our facts of the key statutory phrase:
[T]he phrase "from the presence" or "in the presence" has been construed in a number of cases. "Presence" in this connection is not so much a matter of eyesight as it is one of proximity and control: the property taken in the robbery must be close enough to the victim and sufficiently under his control that, had the latter not been subjected to violence or intimidation by the robber, he could have prevented the taking.
2 WAYNE R. LAFAVE, AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW 443, § 8.11(c) (1986). We find this a logical explanation of the principle of robbery, consistent with the Mississippi robbery statute. Therefore, if only one of these victims had been present during the robbery, it would not matter which one it was. Either could *1114 have been the victim of a robbery of this money.
¶ 20. The remaining issue then is when the same property is by threat or violence taken from the presence and control of two different people, are there two robberies or only one?
¶ 21. Multiple prosecutions or consecutive sentences for different counts in an indictment are not permitted unless there is compliance with the principles protecting an accused from double jeopardy. U.S. CONST. AM. 5. However, "offenses which are the `same' for double jeopardy purposes must usually be joined in the same proceeding if the state wishes to prosecute them." CHARLES H. WHITEBREAD & CHRISTOPHER SLOBOGIN, CRIMINAL PROCEDURE 811 (1993) § 30.04. This is explained by first noting that the Fifth Amendment bar is to placing someone twice in jeopardy for the "same offense." That phrase has always been defined more broadly than the precise charge involved at the first proceeding; otherwise, the prosecution could repeatedly try the defendant despite the double jeopardy ban, given the wide array of crimes than any given act may trigger. Id. This means that some charges that could not be brought in multiple prosecutions may nonetheless be combined in one trial.
¶ 22. The well-established test under this constitutional principle is found in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). A relatively recent restatement of Blockburger was that when "each [separate charged crime] requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes...." Iannelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). There is no traditional double jeopardy problem as to Towner's prosecutions since there would be a different element in each offense-the name of the victim. Under the Blockburger "same element" test, "a single criminal act involving three victims can be considered three separate offenses." WHITEBREAD & SLOBOGIN, CRIMINAL PROCEDURE at 812, citing Hoag v. State, 356 U.S. 464, 466, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958) (robberies of three people in a tavern could be separately prosecuted), modified by Ashe v. Swenson, 397 U.S. 436, 446 n. 10, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (collateral estoppel from an acquittal on one victim may bar later prosecution on different victim).
¶ 23. What is significant about the victims of a robbery may be seen from issues that arise with larceny. "However diverse may be the ownership of property which is the subject of larceny, if the act of taking constitutes but a single act, but one offense is committed." State v. Dalton, 91 Miss. 162, 44 So. 802 (1907). Taking one item of property owned by two people is one larceny. Robbing two people of one item of property at gunpoint while the property is within their proximity and control, even if neither of them owns it, may be two robberies. This is because larceny is a crime against property while robbery is a crime against persons. Thus the number of persons does not matter in one but does in the other.
¶ 24. The prosecution of Towner for both robberies in the same trial also avoided a different problem. The United States Supreme Court dealt with a similar but not identical set of facts in an appeal from a conviction in which the accused was charged in the robbery of several participants in a poker game, with the separate robbery of each poker player being the basis for a separate charge. Ashe v. Swenson, 397 U.S. at 437, 90 S.Ct. 1189. After a trial on a single charge resulted in acquittal because of evidence that the accused *1115 had not been present at the robbery, the Supreme Court found that a later trial for robbery of another victim was barred by collateral estoppel. Id. at 444. Ashe was later explained this way:
[A] strict application of the Blockburger test would have permitted imposition of consecutive sentences had the charges been consolidated in a single proceeding. In Ashe, separate convictions of the robbery of each victim would have required proof in each case that a different individual had been robbed.
Brown v. Ohio, 432 U.S. 161, 166 n. 6, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The Court said that "two offenses [may be] sufficiently different to permit the imposition of consecutive sentences, [but] successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." Id.
¶ 25. The difference between Ashe and the robbery committed by Towner is that different portions of the money taken were the separate property of each individual poker player. Here, Towner was accused of taking a single fund. Still, under Blockburger there is at least one different element in each count against Towner, namely, the different victim. In Ashe there would have been two differences, the amount of money taken and the name of the victim. One difference is enough. The Ashe analysis permitted the multiple robberies of the poker players to be prosecuted in one trial and separately sentenced. The problem only arose when separate trials were held.
¶ 26. Finally, as already quoted references to Blockburger indicate, since there were not separate trials at which Towner was required successively to defend himself, the principal double jeopardy issue here would be if Towner had received consecutive sentences. "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. at 165, 97 S.Ct. 2221. Towner was convicted as a habitual offender on two counts of armed robbery and sentenced to two twenty year terms to run concurrently. There is no pair of consecutive sentences which would qualify as a multiple punishment.
¶ 27. We find no multiplicity error.

III. Ineffective assistance of counsel
¶ 28. Towner claims that his counsel was ineffective and as a result he was unable to receive a fair trial. Such claims require, first, that the defendant show that his counsel was ineffective, and second, that this deficiency in performance prejudiced the defendant against charge he is facing. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden is on the defendant to prove both. Pipkins v. State, 756 So.2d 777, 779 (Miss.Ct.App.1999). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S.Ct. 2052.
¶ 29. Towner identifies several allegedly deficient acts by his attorney. However, Towner only asserts prejudice as to one such claim, namely, his counsel's failure to renew his motion for directed verdict at the end of trial. Since as we point out in the next issue, there was no insufficiency in the evidence, any such motion would properly have been denied. No prejudice occurred.

*1116 IV. Sufficiency and weight of evidence

¶ 30. The last two issues concern the adequacy of the evidence. The standard of review for a claim of insufficient evidence is this:
[T]he evidence as a matter of law is viewed and tested in a light most favorable to the state. The credible evidence consistent with [an accused's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Jones v. State, 669 So.2d 1383,1388 (Miss. 1995).
¶ 31. If the evidence is insufficient, the accused should be discharged from further jeopardy. However, if the judgment is against the great weight of evidence, which Towner also alleges it is, then the accused is entitled to a new trial. For that allegation, we give the jury's verdict the benefit of all favorable inferences, accept as true the evidence favorable to the verdict, and reverse only if we are "convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." McClain v. State, 625 So.2d 774, 782 (Miss. 1993).
¶ 32. We have already set out a summary of the evidence. We find in the record nothing to cause us under these review standards to reverse the judgment based on inadequacy of the evidence.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF TWO COUNTS OF ARMED ROBBERY AND SENTENCE OF TWENTY YEARS ON EACH, WITH THE SENTENCES TO RUN CONCURRENTLY WITHOUT THE PROSPECT OF PAROLE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.
McMILLIN, C.J., LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, THOMAS AND IRVING, JJ.
KING, P.J., dissenting.
¶ 34. I dissent from the majority opinion herein. I believe there is an issue of double jeopardy in violation of the U.S. Const. Amend. V, and the Miss. Const. art. 3, § 22.
¶ 35. There are three categories of protection within the concept of double jeopardy. They are (1) protection from a second prosecution for the same offense after acquittal, (2) protection from a second prosecution for the same offense after conviction, and (3) protection from multiple punishments for the same offense. Brown v. State, 731 So.2d 595(¶ 10) (Miss.1999). It is the third category of double jeopardy, multiple punishment for the same offense (multiplicity), which Towner has alleged to be error. Towner was convicted of two counts of armed robbery and sentenced to serve two concurrent twenty year terms.
¶ 36. The indictment against Towner read:

Count I

That: OSCAR HAVEN TOWNER
in the First Judicial District of Harrison County, Mississippi, on or about November *1117 15, 1998, did wilfully, unlawfully and feloniously take, steal and carry away from the presence and against the will of Jennifer Larson, approximately Two Thousand, Five Hundred Seven and 00/100 Dollars ($2,507.00) in United States currency, the personal property of the said Jennifer Larson, of which she was in lawful possession by virtue of her employment by Two-Can, Inc., a Mississippi corporation, d/b/a Toucan's Restaurant, located at 9265 Highway 9, Gulfport, Mississippi, by putting the said Jennifer Larson in fear of immediate injury to her person, by the exhibition of a deadly weapon, to-wit: a handgun, contrary to the form of the statute in such cases made and provided and against the peace and dignity of The State of Mississippi.

COUNT II
As part of the same common scheme or plan that:

OSCAR HAVEN TOWNER
in the First Judicial District of Harrison County, Mississippi, on or about November 15, 1998, did wilfully, unlawfully and feloniously take, steal and carry away from the presence and against the will of Donna McMurtray, approximately Two Thousand, Five Hundred Seven and 00/100 Dollars ($2,507.00) in United States currency, the personal property of the said Donna McMurtray, of which she was in lawful possession by virtue of her employment by Two-Can, Inc., a Mississippi corporation, d/b/a Toucan's Restaurant, located at 9265 Highway 9, Gulfport, Mississippi, by putting the said Donna McMurtray in fear of immediate injury to her person, by the exhibition of a deadly weapon, to-wit: a handgun, contrary to the form of the statute in such cases made and provided and against the peace and dignity of The State of Mississippi.
¶ 37. Each count charged Towner with having taken $2,507. However the evidence showed that there was only $2,507 taken, and it was only taken once, rather than twice.
¶ 38. There is accordingly, only one armed robbery, and that was of a single sum of $2,507.
¶ 39. In addressing Towner's claim of multiple punishment for the same offense, the majority opinion claims to have followed the test set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180 (1932). The Blockburger court stated, "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Id. at 304, 52 S.Ct. 180 Unlike Blockburger, Towner has not been charged with a violation of two distinct statutory provisions. He has been charged with two violations of one statutory provision.
¶ 40. The majority seeks to satisfy the Blockburger test by saying that while there was a single theft, it was done in the presence of two separate persons, and is therefore two separate acts. Such a proposition evidences either a misreading or a misunderstanding of Blockburger.
¶ 41. As support for its position that there is no double jeopardy problem, the majority cites the Whitebread & Slobogin text on criminal procedure, which references Hoag v. State, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958). However, the facts of that case would appear to offer no comfort to the majority position. Reciting the facts of Hoag in his dissent, Chief Justice Warren states, "On Sept. 20, 1950, three armed men entered a tavern in Fairview, New Jersey, lined up five persons *1118 against a wall and robbed each of them." Id. at 473, 78 S.Ct. 829 (emphasis added).
¶ 42. The clear distinction between Hoag and Towner is that five separate acts of robbery occurred, whereas in Towner there was only one.
¶ 43. There are indeed offenses where a single act can result in multiple and identical charges. Brown v. State, 731 So.2d 595(¶ 11) (Miss.1999). However, that is possible only where there is some act which is peculiarly personal to each individual impacted. This Court found the existence of such a peculiarly personal impact in Henley v. State, 749 So.2d 246 (Miss.Ct. App.1999), holding, "In the instant case, Henley and his co-defendant not only committed armed robbery against the Pizza Hut restaurant, but also robbed five individuals, placing each of them in immediate fear of injury with a deadly weapon and depriving each of them of his or her personal property." Id. at (¶ 12) (emphasis added).
¶ 44. That is not the situation in the present case. The only matter peculiarly personal to each person in this case is her name. There has been no showing of an individual impact upon both Jennifer Larson and Donna McMurtray. There is no suggestion that any portion of the money was the personal property of either Larson or McMurtray.
¶ 45. The indictment alleges that each had the money in her "possession by virtue of her employment by Two Cans, Inc., a Mississippi corporation, d/b/a Toucan's Restaurant." This is at best an allegation of joint possession. A single taking of jointly possessed property, without more, does not give rise to separate and distinct offenses. State v. Dalton, 91 Miss. 162, 165, 44 So. 802 (1907).
¶ 46. For the foregoing reasons, I find merit in Towner's argument of double jeopardy by multiple punishment for the same offense (multiplicity) and while affirming on Count I, would reverse and render on Count II.
¶ 47. Notwithstanding the majority's carefully penned defense of its efforts, close scrutiny of that opinion reveals that one thing remains unchanged. That one thing is this, the majority opinion finds no support in reason or the law.
¶ 48. The majority states that a single taking of property in an armed robbery where two persons are merely present constitutes two separate offenses of armed robbery. If such a position is followed to its illogical conclusion the armed robbery of a banking institution, in which 40 persons were merely present and had nothing taken from them would yield 40 counts of armed robbery.
¶ 49. There are three critical elements to armed robbery as set forth in § 97-3-79 of the Mississippi Code Annotated. They are (1) the use of a deadly weapon, (2) placing of an individual in fear of immediate injury from the weapon, and (3) the taking of personal property of another from his presence. Miss.Code Ann. § 97-3-79 (Rev.2000).
¶ 50. While elements 1 and 2 are present in this case, the majority falls short on the third element.
¶ 51. There was no money taken from McMurtray. The money was taken from Larson. The money was locked in the office to which Larson had the keys, and therefore possession of the money was in Larson. It was Larson from whom Towner took the money.
¶ 52. Lastly, the majority suggests that there is no double jeopardy because Towner received concurrent sentences rather than consecutive sentences. Such an assertion is both illogical and myopic. The mere fact that Towner is to serve his *1119 sentences concurrently does not mean he is not being twice punished for the same act. The record reflects that he was twice convicted and received a sentence on each conviction.
¶ 53. Because I believe the majority's view to be unsound and myopic, I dissent.
BRIDGES, THOMAS AND IRVING, JJ., JOIN THIS SEPARATE OPINION.