CARLTON, J.,
for the Court:
¶ 1. Johnny Lewis Washington appeals the judgment of the Lowndes County Circuit Court, which dismissed in part and denied in part his motion for post-conviction relief (PCR). The circuit, court dismissed without prejudice the portion of Washington’s PCR motion pertaining to the computation of his- time served. The circuit court then treated Washington’s remaining claims as claims for post-conviction relief and denied the claims as time-barred under Mississippi Code Annotated section 99-39-5 (Supp.2012). On appeal, Washington argues that the circuit court erred by (1) ruling on his PCR motions as one motion, and (2) finding his claims time-barred.[1] Finding no error, we affirm.
FACTS
¶2. Washington’s underlying conviction of capital murder was affirmed on direct appeal by the Mississippi Supreme Court in Washington v. State, 361 So.2d 61, 63-64 (Miss.1978). In affirming Washington’s conviction, the supreme court set forth the operative facts of this case:
*36 Woods Quick Pick, a Columbus, Mississippi! ] convenience store, was robbed on the night of March 26, 1977, by two men armed with shotguns and wearing stocking masks. During the robbery, one of the bandits, later identified as Johnny Lewis Washington, at close range shot J.K. Woods, the proprietor of the store, in the stomach with a long-barrel shotgun loaded with buckshot. Woods died about five hours later in a Columbus hospital.
Booker T. Cole, Jr. testified that between 7:30 and 8:00 [p.m.] on March 26, 1977, Johnny Washington contacted him and told him to come by his house because “he had something up[.”] Some time later, when Cole arrived at Washington’s house, the defendant told Cole that they were going to rob a Quick Pick. Washington provided Cole with a stocking mask and a sawed-off shotgun, and they took up their station across the street from Woods Quick Pick. After assembling and loading their shotguns, when the coast was clear they ran across the street and into Woods Quick Pick store. J.K. Woods, owner of the store, Roy Thompson, an employee, and a female employee, Elouise Clark, were in the store.
Cole and Washington pointed their shotguns at Woods and Thompson, and told them to open the cash registers and “give us the money[.”] Thompson began to put the money from the first cash -register into a brown paper sack. Cole, the smaller and younger of the two robbers, found a bank sack of money in a cabinet drawer, and he fled with that sack.
Washington, in the meantime, ordered Woods to put the money from the second cash register into the same paper sack that Thompson had put the money from the first cash register. Woods misunderstood and reached for another paper sack, whereupon, according to the testimony of Thompson, Washington hit Woods over the head with the gun barrel “just as hard as he eould[.”] In falling, Woods knocked Thompson’s sack of money off on the floor. Thompson told Washington that Woods had been drinking and to let him sack the money. Washington told Thompson not to move and placed the shotgun about 8 inches from Thompson’s head. Woods went ahead and picked up the sack and sacked the money from the second cash register.
As Woods handed Washington the sack in one hand, he reached for the gun barrel with the other, but missed, and Washington kept the gun on Woods as he, Washington, backed toward the door. Woods moved very slowly toward Washington. Just before he left, Washington fired his shotgun into Woods’[s] stomach. Washington reloaded his shotgun and left. Thompson testified that Washington and Woods were about 10 feet apart when Washington fired, and that Washington could very easily have made his exit with his sack of money without shooting Woods.
Cole testified that he was a short distance away when he heard the shot, and Washington came running out of the store telling Cole that he had shot Woods. Cole testified that later that night, about 12:30 or 1:00 [a.m.], they got together and divided the money (about $600) between them.
Washington’s defense was that he was at a party, was not at Woods Quick Pick, did not commit the robbery, nor did he kill Woods. Several people at the party testified that Washington did not arrive there until around midnight, and no witness testified that Washington was there from 10:00 to 10:30 [p.m.] *37 Ben Hodo of Ethelsville, Alabama, was visiting his grandmother in Columbus, Mississippi, on the night of the robbery. He testified that around 10:00 [p.m.], as he was going down to Lee’s Restaurant to get something to eat, he saw a man in an alley next to Woods Quick Pick with a long gun and a sack of money. Hodo testified that he and the man with the long gun looked at each other about 10 seconds and that they were close together. He positively identified Washington as the one he saw in the alley with the sack of money and long gun.
Id. at 63-64.
¶ 3. On May 10, 1977, a Lowndes County grand jury indicted Washington for the capital murder of J.K. Woods in Lowndes County cause number 5859.[2] A jury subsequently convicted Washington of capital murder, and he was sentenced to death. The Mississippi Supreme Court affirmed Washington’s conviction and sentence on July 12, 1978. See Washington v. State, 361 So.2d 61 (Miss.1978). On February 25, 1983, in response to the United States Court of Appeals for the Fifth Circuit’s mandate in Washington v. Watkins, 655 F.2d 1346 (5th Cir. Unit A Sept.1981),[3] the circuit court resentenced Washington to life imprisonment in the custody of the Mississippi Department Of Corrections (MDOC) for the crime of capital murder.
¶4. On that same day, February 25, 1983, a Lowndes County grand jury indicted Washington for the armed robbery of Roy Thompson in Lowndes County cause number 7925.[4] Washington pled guilty to armed robbery and received a forty-year consecutive sentence in the custody of the MDOC. Washington was also indicted for the aggravated assault of Elouise Clark in Lowndes County cause number 7926.[5] Washington pled guilty to the crime of aggravated assault, and the circuit court sentenced him to a consecutive sentence of twenty years in the custody of the MDOC.
¶ 5. On July 19, 2011, Washington filed a PCR motion challenging his conviction in cause number 7926 (aggravated assault). *38 Then, on July 29, 2011, Washington filed a PCR motion challenging his conviction in cause number 7925 (armed robbery). On August 26, 2011, the circuit court entered an order dismissing in part and denying in part Washington’s claims in cause number 7926. Specifically, the circuit court’s order states:
Came on to be heard this day the above styled and numbered post[-]eonviction matter on Motion for Post[-]Conviction Relief filed by the Petitioner herein on July 19, 2011, concerning Petitioner’s criminal case, Lowndes County Criminal Cause Number 5859, in which the Petitioner pled guilty and was sentenced February 25,1983.
The [c]ourt, after thoroughly reviewing the Petitioner’s motion, finds that the Petitioner needs to go through the Administrative Remedies [P]rogram at the Mississippi Department of Corrections before applying to the [c]ircuit [c]ourt for relief. Accordingly, the above styled and captioned cause, as it pertains to the expiration of the Petitioner[’s] sentence, is hereby dismissed, without prejudice. The Petition[er] is thereby directed to file with the Mississippi Department of Corrections’ Administrative Remedies Program for a computation of served time.
The [cjourt also finds the other claims in • said [mjotion have been filed past the statute of limitations provided in [sjection 99 — 39—5[,j which allows for a post-conviction motion to be filed three years after conviction following a plea of guilty or three years following ruling on direct appeal following trial. Further, the motion meets none of the exception[s] to [sjection • 99 — 39—5[.j The [cjourt is therefore of the opinion that said [mjotion(s) are time barred and should be, and hereby are, overruled and denied.
IT IS THEREFORE ORDERED that the Post-Conviction Motion filed by the Petitioner herein be dismissed without prejudice in part, and overruled and denied, in part.
Washington now appeals.
STANDARD OF REVIEW
¶ 6. ‘When reviewing a circuit court’s denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are ‘clearly erroneous’; however, we review the circuit court’s legal conclusions under a de novo standard of review.” Boyd v. State, 65 So.3d 358, 360 (¶ 10) (Miss.Ct. App.2011).
DISCUSSION
I. ONE JUDGMENT PER FILING
¶ 7. Washington argues that the circuit court erred by ruling on his two PCR motions as one single motion for relief. In support of his claim, Washington cites to Mississippi Code Annotated section 99-39-5(2), which allows a PCR motion to challenge one judgment only.[6]
¶ 8. The circuit court’s order states that Washington’s PCR motion, filed on July 19, 2011, concerns his criminal case in cause number 5859, “in which the Petitioner pled guilty and was sentenced [onj February 25, 1983.” A review of the record shows that the circuit court cited the incorrect cause number in its order since Washington pled guilty and received his sentences on February 25, 1983, in cause numbers 7925 and 7926, not in cause number 5859. The trial court only resentenced Washington to life imprisonment in cause number 5859 on February 25,1983.
*39 ¶ 9. The circuit court’s order, however, clearly states that it reviewed Washington’s July 19, 2011 PCR motion prior to entering its order dismissing in part and denying in part his PCR motion. Washington’s July 19, 2011 PCR motion solely challenged his aggravated-assault conviction in cause number 7926. As such, we, like the trial court, will review Washington’s claims pertaining to only his conviction for aggravated assault in cause number 7926.
II. ADMINISTRATIVE REMEDIES PROGRAM
¶ 10. Washington claims that he currently is serving an expired sentence. He offers no evidence in support of this proposition in his appellate brief. However, in arguing his claim of an expired sentence in his PCR motion, Washington states:
Petitioner was sentenced to serve 20 years for the instant conviction.... This sentence was to be served pursuant to the 50% law, i.e., petitioner would receive a day for each day served via earned time. Petitioner has served 34 years and ha[s] received 30 years [of] earned time credits, for a ... total of 64 years, more than enough to perfect the 20[-year] sentence in cause no. 7926[.]
¶ 11. As noted by the circuit court in its order, when raising a claim regarding the operation of his sentence, Washington must exhaust all of his administrative remedies through the MDOC prior to looking to the courts for relief. See Burns v. State, 933 So.2d 329, 331 (¶9) (Miss.Ct. App.2006) (“[A]n inmate who is uncertain about the operation of his sentence and desires clarity should pursue the administrative review procedures before turning to court.”). Accordingly, we find that the circuit court committed no error in dismissing without prejudice Washington’s claims that pertained to the computation of his time served to allow him to proceed through the MDOC’s Administrative Remedies Program before applying to the court for relief.
III. TIMELINESS
¶ 12. Washington argues that the circuit court erred in denying his claims as time-barred under section 99-39-5. Specifically, Washington asserts that he raised constitutional issues, which should be excepted from the procedural bar.
¶ 13. Currently, under the Uniform Post-Conviction Collateral Relief Act (UPCCRA), “a three-year limitations period applies to claims for relief[.]” White v. State, 59 So.3d 633, 635 (¶6) (Miss.Ct.App. 2011). Specifically, Mississippi Code Annotated section 99-39-5(2) provides in part:
A motion for relief under this article shall be made within three (3) years after the time in which the petitioner’s direct appeal is ruled upon by the Supreme Court of Mississippi or, in case no appeal is taken, within three (3) years after the time for taking an appeal from the judgment of conviction or sentence has expired, or in case of a guilty plea, within three (3) years after entry of the judgment of conviction.
“[The UPCCRA] applies prospectively from its date of enactment, April 17,1984.” Phillips v. State, 913 So.2d 330, 332 (¶ 10) (Miss.Ct.App.2005) (quoting Odom v. State, 483 So.2d 343, 344 (Miss.1986)). “Individuals convicted prior to April 17, 1984, have three (3) years from April 17, 1984, to file their petition for post[-]conviction relief.” Id. “Those individuals convicted after April 17, 1984, generally have three (3) years in which to file a petition for relief.” Id.
¶ 14. Washington pled guilty to aggravated assault in cause number 7926 in *40 February 1983, prior to the enactment of section 99-39-5. Therefore, Washington had three years from April 17,1984, to file his PCR motion. Washington filed his PCR motion on July 19, 2011, well past the statutory time frame.
¶ 15. The Mississippi Supreme Court, in Rowland v. State, 42 So.3d 503, 508 (¶ 16) (Miss.2010), recognized, however, that “[ejrrors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA.” In Rowland, Defendant Robert Rowland and his two codefendants entered a guilty plea to two counts of armed robbery and two counts of capital murder stemming from an incident that occurred in 1979. Id. at 504 (¶ 1). Rowland thereafter filed a PCR motion in 2007, alleging that his convictions and sentences for armed robbery violated his double-jeopardy rights since they were the underlying felonies used to convict him of capital murder. Id. The circuit court dismissed Rowland’s PCR motion as time-barred, and this Court affirmed. Id. The Mississippi Supreme Court subsequently granted certiorari and reversed and remanded the case to the circuit court for an evidentiary hearing to determine if Rowland’s conviction for armed robbery violated his double-jeopardy rights. Id. at 508 (¶ 16).
¶ 16. Here, Washington claims that a violation of his double-jeopardy rights and right to a speedy trial occurred; his sentence has expired; his counsel rendered ineffective assistance; and he entered an involuntary guilty plea. The record before us differs from that in Rowland in that the record in the present case is clearly sufficient to address Washington’s claims of error.
¶ 17. The record in today’s case includes Washington’s plea petition and plea colloquy, which show that Washington entered a knowing, voluntary, and intelligent guilty plea on February 25, 1983, to the crime of aggravated assault. The plea petition and plea colloquy also reflect that Washington knowingly waived his constitutional guarantees, including his right to a speedy trial, and that he was satisfied with his attorney’s services and advice.[7] Specifically, Washington’s plea petition, in part, states:
I wish to plead GUILTY to the charge of aggravated assault.
I told my lawyer all the facts and circumstances known to me about the charges against me. I believe that my lawyer is fully informed on all such matters. My lawyer has counseled and advised me on the nature of each charge; and on any and all lesser[-]included charges; and on all possible defenses that I might have in this case.
My lawyer has advised me as to the probabilities of my conviction on the charges with which I am charged and thoroughly discussed all aspects of my case with me. My lawyer has made no threats or promises of any type or kind to induce me to enter this plea of guilty, howeverf,] and the decision to seek the entry of this plea was my own and mine alone, based on my own reasons and free from any outside coercive influences.
I understand that I may plead “Not Guilty” to any offense charged against me. If I choose to plead “Not Guilty” the constitution guarantees me:
(a) the right to a speedy and public trial by jury,
[[Image here]]
Knowing and understanding the Constitutional guarantees set forth in this paragraph, I hereby waive them and *41 renew my desire to enter a plea of [g]uilty.
Based upon the foregoing, we find no merit to Washington’s claims of an involuntary plea, ineffective assistance of counsel, and a speedy-trial violation.
¶ 18. We, likewise, find no merit to Washington’s claim that a violation of his double-jeopardy rights occurred. In support of his double-jeopardy claim, Washington argues that he was punished multiple times for the same offense. However, the record belies his claim. Washington’s indictment for capital murder alleged that he killed Woods while engaged in the commission of armed robbery. A jury subsequently convicted Washington of capital murder and imposed the death penalty. After Washington’s conviction of capital murder and sentence were affirmed by the Mississippi Supreme Court in 1978, the Fifth Circuit reversed and remanded Washington’s death sentence, finding error of constitutional dimension in the circuit court’s instructions to the jury at the sentencing phase of the trial.[8] Thereafter, Washington and his counsel filed a motion on February 25, 1983, that sought resen-tencing and waived a trial by jury for such resentencing. On that same date, the circuit court resentenced Washington to life imprisonment for his capital-murder conviction. Also on February 25, 1983, the State indicted Washington separately for the aggravated assault of Clark and for the armed robbery of Thompson.
¶ 19. As noted above, Washington’s indictment for capital murder provided that he murdered Woods whiled engaged in the commission of armed robbery. Today’s case, however, involves Washington’s crime of aggravated assault against Clark. This Court has held that “separate offenses, though committed under a common nucleus of operative fact, do not present a legal impediment to multiple prosecutions under the double jeopardy clause of both the federal and the state constitutions.” Shavers v. State, 94 So.3d 362, 363 (¶5) (Miss.Ct.App.2012). Therefore, Washington failed to raise a threshold showing of a double jeopardy violation since the offenses at issue constitute separate offense, and since the State did not separately charge Washington with the underlying felony offense to the capital-murder charge. This argument is without merit.
¶ 20. Furthermore, we note that Washington’s claim of an expired sentence actually constitutes a question as to the operation of his sentence. As noted above, if Washington desires clarity as to his sentence, he should pursue the administrative-review procedures provided by the MDOC prior to seeking judicial review. See Burns, 933 So.2d at 331 (¶ 9). This issue is without merit.
¶ 21. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT DISMISSING IN PART WITHOUT PREJUDICE AND DENYING IN PART THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. Washington submits that a violation of his double-jeopardy rights and right to a speedy trial occurred. Washington also contends that he received an expired sentence, and that his counsel rendered ineffective assistance. Lastly, Washington asserts that he entered involuntary guilty pleas.

. The indictment for capital murder states, in part, as follows:
Johnny Lewis Washington!,] late of the County aforesaid, on or about the 26th day of March in the year of our Lord, 1977, did then and there wilfully, unlawfully, felo-niously and of his malice aforethought kill and murder a human being, J.K. Woods, without authority at law and not in necessary self-defense while he, the said Johnny Lewis Washington was then and there engaged in the commission of the crime of armed robbery in violation of section 97-3-19(2)( [e]) of the Mississippi Code Annotated[.]

. The Fifth Circuit reversed Washington's death sentence and remanded the case for resentencing. Watkins, 655 F.2d at 1378.

. The indictment for armed robbery, in part, states:
Johnny Lewis Washington!,] late of the County aforesaid, on or about the 26th day of March, 1977, in the County aforesaid did unlawfully, wilfully, and feloniously, take, steal, and carry away from the presence of Roy Thompson, the personal property of J.K. Woods, to-wit: money, against the will of the said Roy Thompson, by putting the said Roy Thompson in fear of immediate injury to his person by the exhibition of a deadly weapon, to-wit: a shotgun, with the intent to permanently deprive the owner thereof!.]

.The aggravated assault indictment states, in pertinent part:
Johnny Lewis Washington!,] late of the County aforesaid, on or about the 26th day of March, 1977, in the County aforesaid!,] , did unlawfully, wilfully, and feloniously, attempt to cause serious bodily injury to [El-ouise] Clark by pointing a loaded shotgun at the said [Elouise] Clark and threatening said [Elouise] Clark with said loaded shotgun, recklessly under circumstances manifesting extreme indifference to the value of human life!-]

. See McKenzie v. State, 66 So.3d 1274, 1275 n. 2 (Miss.Ct.App.20il).

. See URCCC 8.04(A).

. See Watkins, 655 F.2d at 1378; Washington, 361 So.2d at 68.