# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-02159-COA

JOHNNY LEWIS WASHINGTON A/K/A
JOHNNY L. WASHINGTON

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2013 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHNNY LEWIS WASHINGTON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | DENIED MOTION FOR POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 03/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     Johnny Lewis Washington appeals the judgment of the Lowndes County Circuit Court, which denied his second motion for post-conviction relief (PCR) on December 6, 2013. On appeal, Washington argues that the circuit court erred by accepting his guilty plea to the charge of the armed robbery of Roy Thompson because it allegedly violated Washington's double-jeopardy rights. He claims that his prior conviction for the capital murder of J.K. Woods prohibited his later indictment and conviction of the armed robbery

of Thompson.[1]  In affirming the trial court's dismissal in part and denial in part of Washington's first motion for PCR on a related issue, we held that double jeopardy posed no bar to Washington's subsequent prosecution for aggravated assault against a third victim, Elouise Clark.  *Washington v. State*, 154 So. 3d 34, 37-38 (¶¶3-5) (Miss. Ct. App. 2012) (*Washington II*).  Upon review, we find that Washington failed to raise a threshold showing of a double-jeopardy violation due to his conviction for the capital murder of Woods and his subsequent conviction for the armed robbery of Thompson.  Finding no error, we affirm.

**FACTS**

¶2.     This case involves Washington's prior conviction for the capital murder of Woods, as well as his subsequent conviction for the armed robbery of a second victim, Thompson.[2] The procedural history shows that the Mississippi Supreme Court affirmed Washington's conviction of the capital murder of Woods on direct appeal in *Washington v. State*, 361 So. 2d 61 (Miss. 1978) (*Washington I*).  Washington filed two PCR motions in July 2011, one challenging his conviction for the aggravated assault of Clark, and the other challenging his armed-robbery conviction, which the trial court dismissed in part and denied in part.

¶3.     This Court affirmed the trial court's judgment in *Washington II*, 154 So. 3d at 41 (¶18), wherein Washington argued that the trial court erred in (1) treating his separate PCR motions, challenging the armed-robbery conviction and sentence and the aggravated-assault

---

[1] A Lowndes County grand jury indicted Washington for capital murder in 1977.  A different Lowndes County grand jury later indicted Washington for the armed robbery of Thompson, as well as the aggravated assault of Elouise Clark, in 1983.

[2] The record reflects that Washington pled guilty to the charges of armed robbery (Thompson) and aggravated assault (Clark).

2

conviction and sentence, as one motion, and (2) finding his claims time-barred.    In

*Washington II*, this Court adopted the operative facts of this case as set forth by the supreme

court in *Washington I*:

> Woods Quick Pick, a Columbus, Mississippi convenience store, was robbed on the night of March 26, 1977, by two men armed with shotguns and wearing stocking masks.  During the robbery, one of the bandits, later identified as Johnny Lewis Washington, at close range shot J.K. Woods, the proprietor of the store, in the stomach with a long-barrel shotgun loaded with buckshot.  Woods died about five hours later in a Columbus hospital.
>
> Booker T. Cole, Jr. testified that between 7:30 and 8:00 p.m. on March 26, 1977, Johnny Washington contacted him and told him to come by his house because "he had something up."  Sometime later, when Cole arrived at Washington's house, the defendant told Cole that they were going to rob a Quick Pick.  Washington provided Cole with a stocking mask and a sawed-off shotgun, and they took up their station across the street from Woods Quick Pick.  After assembling and loading their shotguns, when the coast was clear they ran across the street and into Woods Quick Pick store.  J.K. Woods, owner of the store, Roy Thompson, an employee, and a female employee, Elouise Clark, were in the store.
>
> Cole and Washington pointed their shotguns at Woods and Thompson, and told them to open the cash registers and "give us the money."  Thompson began to put the money from the first cash register into a brown paper sack.  Cole, the smaller and younger of the two robbers, found a bank sack of money in a cabinet drawer, and he fled with that sack.
>
> Washington, in the meantime, ordered Woods to put the money from the second cash register into the same paper sack that Thompson had put the money from the first cash register.  Woods misunderstood and reached for another paper sack, whereupon, according to the testimony of Thompson, Washington hit Woods over the head with the gun barrel "just as hard as he could."  In falling, Woods knocked Thompson's sack of money off on the floor.  Thompson told Washington that Woods had been drinking and to let him sack the money. Washington told Thompson not to move and placed the shotgun about 8 inches from Thompson's head.  Woods went ahead and picked up the sack and sacked the money from the second cash register.
>
> As Woods handed Washington the sack in one hand, he reached for the gun barrel with the other, but missed, and Washington kept the gun on Woods as

3

he, Washington, backed toward the door. Woods moved very slowly toward Washington. Just before he left, Washington fired his shotgun into Woods's stomach. Washington reloaded his shotgun and left. Thompson testified that Washington and Woods were about 10 feet apart when Washington fired, and that Washington could very easily have made his exit with his sack of money without shooting Woods.

Cole testified that he was a short distance away when he heard the shot, and Washington came running out of the store telling Cole that he had shot Woods. Cole testified that later that night, about 12:30 or 1:00 a.m., they got together and divided the money (about $600) between them.

Washington's defense was that he was at a party, was not at Woods Quick Pick, did not commit the robbery, nor did he kill Woods. Several people at the party testified that Washington did not arrive there until around midnight, and no witness testified that Washington was there from 10:00 to 10:30 p.m.

Ben Hodo of Ethelsville, Alabama, was visiting his grandmother in Columbus, Mississippi, on the night of the robbery. He testified that around 10:00 p.m., as he was going down to Lee's Restaurant to get something to eat, he saw a man in an alley next to Woods Quick Pick with a long gun and a sack of money. Hodo testified that he and the man with the long gun looked at each other about 10 seconds and that they were close together. He positively identified Washington as the one he saw in the alley with the sack of money and long gun.

*Id*. at 35-36 (¶2) (quoting *Washington I*, 361 So. 2d at 63-64).

¶4.    This Court then set forth the procedural posture of Washington's 1977 indictment and

subsequent 1983 indictments:

On May 10, 1977, a Lowndes County grand jury indicted Washington for the capital murder of J.K. Woods. . . .   A jury subsequently convicted Washington of capital murder, and he was sentenced to death. The Mississippi Supreme Court affirmed Washington's conviction and sentence on July 12, 1978. *See Washington v. State*, 361 So. 2d 61 (Miss. 1978). On February 25, 1983, in response to the United States Court of Appeals for the Fifth Circuit's mandate in *Washington v. Watkins*, 655 F.2d 1346 (5th Cir. Unit A Sept. 1981), the circuit court resentenced Washington to life imprisonment in the custody of the Mississippi Department Of Corrections (MDOC) for the crime of capital murder.

4

On that same day, February 25, 1983, a Lowndes County grand jury indicted Washington for the armed robbery of Roy Thompson. . . . Washington pled guilty to armed robbery and received a forty-year consecutive sentence in the custody of the MDOC. Washington was also indicted for the aggravated assault of Elouise Clark in Lowndes County cause number 7926.5 Washington pled guilty to the crime of aggravated assault, and the circuit court sentenced him to a consecutive sentence of twenty years in the custody of the MDOC.

On July 19, 2011, Washington filed a PCR motion [(first PCR motion)] challenging his [aggravated assault] conviction. Then, on July 29, 2011, Washington filed a PCR motion [(second PCR motion)] challenging his [armed robbery] conviction . . . . On August 26, 2011, the circuit court entered an order dismissing in part and denying in part Washington's claims[.]

*Washington II*, 154 So. 3d at 37-38 (¶¶3-5) (footnotes omitted). This Court affirmed the trial court's order, finding "no merit to Washington's claim that a violation of his double-jeopardy rights occurred." *Id.* at 41 (¶18).

¶5.     With respect to the issue now before this Court in the present appeal, Washington filed yet another PCR motion in June 2013, asking the trial court to vacate and set aside his conviction and sentence for the armed robbery of Thompson. The trial court found the motion to be without merit, and denied Washington's PCR motion on December 6, 2013. Washington now appeals, claiming that the trial court erred in accepting his guilty plea to the charge of armed robbery because it violated Washington's double-jeopardy rights.

## STANDARD OF REVIEW

¶6.     When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review. *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012).

## DISCUSSION

5

¶7.    Washington argues that his related prior conviction for the capital murder of Woods and his subsequent indictment and conviction for armed robbery[3] against Thompson constitute double jeopardy.  Washington claims that he was punished multiple times for the same offense—armed robbery.  However, the indictments charged separate and distinct offenses, and involved different victims.  Washington was convicted of capital murder for robbing and then killing Woods, while his subsequent armed-robbery conviction resulted from robbing Thompson.  Accordingly, the convictions each required proof of different elements, and thus constituted different offenses.

¶8.    As explained by the Mississippi Supreme Court in *Kelly v. State*, 80 So. 3d 802, 805 (¶9) (Miss. 2012), "[b]oth the United States and Mississippi Constitutions provide protections against double jeopardy, providing in the case of the U.S. Constitution that no 'person shall be subject for the same offense to be twice put in jeopardy of life or limb.'" U.S. Const. amend. V.  *See also* Miss. Const. art. 3, § 22.  To determine whether the Double Jeopardy Clause applies, appellate courts apply the *Blockburger* test.  *Blockburger v. United States,* 284 U.S. 299, 304 (1932); *see also Foreman v. State*, 51 So. 3d 957, 961 (¶10) (Miss. 2011).  In *Blockburger*, the United States Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Blockburger*, 284 U.S. at 304.  Courts must

_____

[3] In *Willie v. State*, 738 So. 2d 217, 219 (¶10) (Miss. 1999), the supreme court held that "a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute."

"determine whether each offense contains an element not present in the other; if not, they are labeled the same offense, for double-jeopardy purposes." *Kelly,* 80 So. 3d at 805 (¶11).

¶9. Washington's indictment for capital murder states, in part, as follows:

> Johnny Lewis Washington[,] late of the County aforesaid, on or about the 26th day of March in the year of our Lord, 1977, did then and there wilfully, unlawfully, feloniously and of his malice aforethought kill and murder a human being, J.K. Woods, without authority at law and not in necessary self-defense while he, the said Johnny Lewis Washington[,] was then and there engaged in the commission of the crime of armed robbery in violation of section 97-3-19(2)([e]) of the Mississippi Code Annotated[.]

¶10. Washington claims that the indictment only charges him with the armed robbery of Woods, and that the grand jury never indicted him for the armed robbery of Thompson. However, the record reflects that subsequent to his conviction for capital murder, another grand jury indeed indicted Washington for the armed robbery of Thompson. The indictment charges that Washington:

> [D]id unlawfully, wilfully, and feloniously, take, steal and carry away from the presence of Roy Thompson, the personal property of J.K. Woods, to-wit: money, against the will of the said Roy Thompson, by putting the said Roy Thompson in fear of immediate injury to his person by the exhibition of a deadly weapon, to-wit: a shotgun, with the intent to permanently deprive the owner thereof.

¶11. We agree with the State's observation that Washington is under the misconception that he cannot be charged with robbing Thompson if the property taken belonged to Woods. In *Towner v. State*, 812 So. 2d 1109, 1113 (¶18) (Miss. Ct. App. 2002), this Court held that "it is not relevant whether the potential victim of a robbery has ownership of the property taken." In that case, the appellant, Towner, was convicted of two counts of armed robbery for robbing two people of one item of property at gunpoint while the property was within

7

their proximity and control. *Id*. This Court addressed the following question: "when the same property is by threat or violence taken from the presence and control of two different people, are there two robberies or only one?" *Id*. at 1114 (¶20). This Court acknowledged that a "relatively recent restatement of *Blockburger* was that when 'each separate charged crime requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Id*. at (¶22) (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)). As a result, the *Towner* court found "no traditional double jeopardy problem as to Towner's prosecutions since there would be a different element in each offense—the name of the victim." *Id*.

¶12.    Regarding Washington's prior claim that a violation of his double-jeopardy rights occurred, this Court previously held in *Washington II* that:

> We . . . find no merit to Washington's claim that a violation of his double-jeopardy rights occurred.  In support of his double-jeopardy claim, Washington argues that he was punished multiple times for the same offense. However, the record belies his claim. Washington's indictment for capital murder alleged that he killed Woods while engaged in the commission of armed robbery.  A jury subsequently convicted Washington of capital murder and imposed the death penalty. . . . On [February 25, 1983], the circuit court resentenced Washington to life imprisonment for his capital-murder conviction. Also on February 25, 1983, the State indicted Washington separately for the aggravated assault of Clark and for the armed robbery of Thompson.
>
> As noted above, Washington's indictment for capital murder provided that he murdered Woods while[ ] engaged in the commission of armed robbery. Today's case, however, involves Washington's crime of aggravated assault against Clark.  This Court has held that separate offenses, though committed under a common nucleus of operative fact, do not present a legal impediment to multiple prosecutions under the double jeopardy clause of both the federal and the state constitutions.   Therefore, Washington failed to raise a threshold showing of a double jeopardy violation since the offenses at issue constitute separate offense, and since the State did not separately charge Washington

8

with the underlying felony offense to the capital-murder charge. This argument is without merit.

*Washington II*, 154 So. 3d at 41 (¶¶18-19) (internal citations and quotation marks omitted).

¶13. In the present appeal, we again find that Washington failed to raise a threshold showing of double jeopardy. As in *Towner,* Washington's convictions for the capital murder of Woods and the armed robbery of Thompson create no double-jeopardy problem since each conviction required proof of different elements, and each had different victims. Furthermore, the capital-murder conviction required proof of an additional element that the armed-robbery conviction did not—the killing of Woods. *See Towner*, 812 So. 2d at 1114 (¶21). "Mississippi has long recognized that separate offenses, though committed under a common nucleus of operative fact, [do] not present a legal impediment to multiple prosecutions under the [D]ouble [J]eopardy [C]lause of both the federal and the state constitutions." *Henley v. State*, 749 So. 2d 246, 249 (¶12) (Miss. Ct. App. 1999). We thus find no error in the trial court's denial of Washington's PCR motion. Accordingly, we affirm the trial court's judgment denying Washington's PCR motion.

¶14. **THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**