COLEMAN, Justice,
dissenting:
¶ 212. I agree with the majority’s disposition of all issues with the exception of Issue I, concerning the proffered expert testimony of Dr. Neuschatz. Instead, I would hold that the trial court abused its discretion when it excluded Dr. Neus-chatz’s expert testimony on eyewitness identification without the analysis mandated by McLemore[39] and Daubert[40] on the grounds that it would be unhelpful to the *348 jury. Further, I would hold that — based on the evidence existing in the record before us — Dr. Neuschatz’s proffered testimony is both relevant and rehable, meeting the controlling standards of Mississippi Rule of Evidence 702, McLemore, and Daubert. Similarly, I also would hold that the trial court improperly excluded Dr. Neuschatz’s testimony pertaining to the suggestive nature of photographic lineups. Accordingly, I would reverse Corrothers’s convictions and sentences and remand the case for a new trial in which the trial court properly analyzes Dr. Neuschatz’s proffered testimony under Mississippi Rules of Evidence 403 and 702 as well as conducts a full Daubert analysis.
I. Whether the trial court abused its discretion and erred as a matter of law in excluding the testimony of a psychologist with expertise in memory and cognition concerning the reliability of eyewitness identification procedures and testimony and photographic lineups in this case.

A. Reliability of Eyewitness Identification

¶ 213. The defense attempted to call Dr. Jeffery Neuschatz, a cognitive psychologist, as an expert in memory and cognition related to eyewitness identification. Dr. Neuschatz has a Ph.D. degree in cognitive psychology and is a tenured professor at the University of Alabama at Huntsville. He has done a significant amount of research and has performed specific studies in the field of eyewitness identification, resulting in numerous publications. He has testified as an expert in the field in courts in Tennessee, Kentucky, and Louisiana, as well as in military courts in Florida and Virginia.
¶ 214. The State objected to Dr. Neus-chatz testifying as an expert, arguing that the proposed testimony did not rely on proven scientific principles, that it was not proven to be generally accepted, and that it would not assist the trier of fact. The trial court did not permit Dr. Neuschatz to testify before the jury, but a proffer of his testimony outside the presence of the jury was allowed. Dr. Neuschatz’s proffered testimony covered two areas — psychological factors that affect the accuracy of eyewitness identifications and safeguards that should be employed when administering photo lineups.
¶ 215. Dr. Neuschatz discussed psychological factors that research has shown to affect adversely the accuracy of eyewitness identifications. He explained that highly stressful situations impair a person’s memory. In a phenomenon known as weapon focus, the presence of a weapon also impairs memory because attention is drawn to the weapon as opposed to the person holding the weapon. Another theory is called “unconscious transfer,” whereby a witness attributes the wrong person to the situation, such as identifying an innocent bystander as the culprit. Dr. Neuschatz would have testified that cross-racial identification lessens the likelihood of an accurate identification, because people tend to have difficulty identifying someone of a different race. Other issues that affect the accuracy of an eyewitness identification are the length of time the witness saw the person, whether the area was well lit, and whether the witness had seen the person before. Dr. Neuschatz would have testified that memories could have been adversely impacted by several of these factors. The victims, including Josh, were in a high stress situation and had witnessed the murder of two close family members. The assailant was wielding a gun, making “weapon focus” a possible problem. The assailant was a black male, and the Clark family was white, thus, the cross-racial *349 identification could have had added difficulty to their identifications.
¶216. Analysis of the admissibility of expert testimony should begin with Mississippi Rule of Evidence 702:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Miss. R. Evid. 702. The United States Supreme Court has further articulated the standard under which courts are to determine the admissibility of testimony of expert witnesses. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). “If the expert’s testimony involves scientific, technical, or any other special knowledge, the trial judge — as gatekeeper — must determine whether the expert’s opinions will help the trier of fact determine the issue in question.” Hill v. Mills, 26 So.3d 322, 329 (¶ 25) (Miss.2010) (citing Daubert, 509 U.S. at 589-91, 113 S.Ct. 2786). The objective of the Daubert gatekeeping requirement “is to ensure the reliability and relevancy of expert testimony.” Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167,143 L.Ed.2d 238 (1999).
¶ 217. Under Daubert, for expert opinions to be admissible, “the expert’s testimony must be supported and based on what is known, and the expert must have knowledge that is more than subjective or unsupported speculation.” Hill, 26 So.3d at 329 (¶ 26). The Daubert Court provided the following “non-exhaustive, illustrative list” of factors for trial courts to consider in determining reliability of expert testimony: (1) whether the expert’s theory can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error of the technique or theory; (4) the existence of standards to control the technique’s operation; and (5) the degree to which the technique or theory has been generally accepted in the relevant scientific community. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 36 (¶ 13) (Miss.2003) (citing Daubert, 509 U.S. at 593-94, 113 S.Ct. 2786). See also Hill, 26 So.3d at 329 n. 6 (¶ 26).
¶ 218. In ruling that Dr. Neuschatz would not be allowed to testify, the trial court noted that expertise in eyewitness identification “has not been recognized as a field of expertise in Mississippi Courts.” However, he recognized that it seemed to be “an emerging field,” and he did not disagree that courts could consider it. The trial court rejected the notion that the jury would be aided by such testimony, stating, “there has been a fairly vigorous robust opportunity by defense counsel to question the perception of Josh Clark without the aid or assistance of an expert.” The trial court also stated that the jury was “well equipped” to handle the issues related to the eyewitness identifications in this case. Without making any findings specific to Daubert, as is required in Mississippi, the trial court concluded that “this particular expert testimony will not assist the trier of fact to understand the evidence or to determine any facts in issue in this case.”
¶ 219. Respectfully, I would hold that the trial court erred in its determination that the expert testimony would not aid the jury. Further, the trial court erred by not applying the Daubert factors in its determination of the admissibility of Dr. *350 Neuschatz’s testimony. Because the trial court failed to apply the correct legal standard, it abused its discretion. Gibson v. Manuel, 534 So.2d 199, 204 (Miss.1988). Accordingly, I would reverse the trial court’s judgment and remand for a new trial in which Dr. Neuschatz’s expert testimony is analyzed under Rule 702 and Dau-bert. In my opinion, Dr. Neuschatz’s testimony is both relevant and reliable under Daubert.
¶ 220. First, there is no question that the proposed testimony by Dr. Neuschatz was relevant, as it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Miss. R. Evid. 401. Because the State possessed no forensic evidence, the conviction of Cor-rothers hinged in large part on the eyewitness identifications, and Corrothers based his defense on the contention that the two eyewitnesses against him had misidentified him. Corrothers had a “fundamental right” to present his theory of the case to the jury, even if he had only minimal evidence in support of it. Chinn v. State, 958 So.2d 1223, 1225 (¶ 13) (Miss.2007). The Chinn Court continued,
We have held that “it is, of course, an absolute right of an accused to have every lawful defense he asserts, even though based upon meager evidence and highly unlikely, to be submitted as a factual issue to be determined by the jury under proper instruction of the court. This Court will never permit an accused to be denied this fundamental right.”
Id. (quoting O’Bryant v. State, 530 So.2d 129, 133 (Miss.1988) (citing Ward v. State, 479 So.2d 713 (Miss.1985); Lancaster v. State, 472 So.2d 363 (Miss.1985); Pierce v. State, 289 So.2d 901 (Miss.1974)). Dr. Neuschatz’s testimony regarding the reliability of eyewitness identifications rendered the accuracy of the eyewitness identifications at the center of the State’s case less probable; accordingly, it was relevant.[41] We must now determine if the proposed expert testimony was reliable under the Daubert factors.
¶221. The first Daubert factor— whether the expert’s theory can be or has been tested — is satisfied. Research and testing on the theories to which Dr. Neus-chatz would testify have been ongoing since the 1970s, when some of the first articles on the accuracy of eyewitness identifications were published. See Elizabeth Loftus, Reconstructing Memory: The Incredible Eyewitness, 15 Jurimetrics J. 188 (1975); Gary L. Wells, et al., Accuracy, Confidence, and Juror Perceptions in Eyewitness Identification, 64 J. Applied Psychology 440 (1978); Elizabeth F. Loftus, Eyewitness Testimony (1979). In 2007, the Tennessee Supreme Court acknowledged that research on memory and eyewitness identification had been ongoing for thirty years and that “[sjcientifically tested studies, subject to peer review, have identified legitimate areas of concern.” State v. Copeland, 226 S.W.3d 287, 299-300 (Tenn.2007) (citing Jacqueline McMurtrie, The Role of the Social Sciences in Preventing Wrongful Convictions, 42 Am.Crim. L.Rev. 1271, 1276, 1277 n. 29 (2005)).
¶ 222. Dr. Neuschatz has done a significant amount of research and testing in the field. Dr. Neuschatz explained that, in his studies, he would show participants a video of events, then tell them they had witnessed a crime. Participants were asked to make an identification from a photo *351 lineup, testing how certain actions and/or instructions would affect their memory. The numerous articles, books, and book chapters he has written reflect the extent of his research in the field of eyewitness identification. His research has been published and peer-reviewed, thus the second Daubert factor is met.
¶ 223. The third Daubert factor, the known or potential rate of error of the applied theory, is also satisfied. Dr. Neus-chatz identified a known rate of error for his various studies, and without obtaining a .05 level of significance — meaning that the same result would not happen by chance alone five times out of one hundred — he would not have made his findings. His work also satisfies the fourth Daubert factor, the existence of standards and controls. By using control groups, Dr. Neuschatz is able to test how certain variables affect eyewitness identification — he conducts essentially the same test with and without certain variables and compares the outcomes. Further, Dr. Neuschatz explained that he would assimilate a large collection of data and, with the use of random assignments, assuming every person is different, he and fellow researchers would be able to “control for any individual differences” by making sure that the differences occurred equally and would not “unduly affect the results.”
¶ 224. The final Daubert factor is the degree to which the technique or theory has been generally accepted in the scientific community. General acceptance within the scientific community is a factor to be considered under Daubert; it is not a requirement. Watts v. Radiator Specialty Co., 990 So.2d 143, 150 (¶ 18) (Miss.2008). According to Dr. Neuschatz’s testimony, scientific research in the field of eyewitness identification has been conducted since the 1970s and has been “gone over many times now.” He testified that several thousand people have been tested over the years in the process of developing the field. Dr. Neuschatz testified, in no uncertain terms, that the field is generally accepted, and the State neither attempted to attack his averment regarding the general acceptance of the field when given the opportunity to cross-examine him nor presented its own evidence contradicting Dr. Neuschatz’s testimony. Based on the evidence available to the trial court, the field in question is generally accepted.[42]
¶ 225. Although reluctant at first, courts across the country have begun to recognize the admissibility of eyewitness-identification testimony. See, e.g., State v. Clopten, 223 P.3d 1103, 1109 (Utah 2009); State v. Copeland, 226 S.W.3d 287, 298-304 (Tenn.2007). See also United States v. Stevens, 935 F.2d 1380, 1401 (3d Cir.1991); United States v. Moore, 786 F.2d 1308, 1313 (5th Cir.1986).[43] The United States *352 Supreme Court has stated, with apparent approval, “[i]n appropriate cases, some States also permit defendants to present expert testimony on the hazards of eyewitness identification evidence.” Perry v. New Hampshire, — U.S.-, 132 S.Ct. 716, 729, 181 L.Ed.2d 694 (2012). The Utah Supreme Court summarized the growing acceptance of eyewitness expert testimony by the courts:
The admissibility of eyewitness expert testimony was first considered by the nation’s courts starting in the 1970s. In general, these early decisions excluded the testimony on grounds that have since been undercut.... The majority of courts that have considered the issue since then have held that admission or exclusion of the evidence is within the broad discretion of the trial court. Starting in the 1980s, however, numerous state and federal courts recognized that the statistical evidence on eyewitness inaccuracy was too substantial to ignore. Many of these appellate courts instructed trial judges that, under certain circumstances, it would be an abuse of discretion not to allow expert testimony on the subject.
The first such decision came from the Arizona Supreme Court in State v. Chapple, 135 Ariz. 281, 660 P.2d 1208 (1983). There, the trial court excluded an eyewitness expert on grounds that the testimony would not assist the jury and that cross-examination was sufficient to reveal problems with the identification. Id. at 1223-24. The Arizona Supreme Court reversed and held that, in cases where the expert would provide information about eyewitness factors relevant to the case, it was error to exclude the testimony as unhelpful. Id. Over the last two decades, numerous other state courts have either reversed decisions to exclude or encouraged the inclusion of eyewitness expert testimony. See, e.g., Campbell v. People, 814 P.2d 1, 8 (Colo.1991); Johnson v. State, 272 Ga. 254, 526 S.E.2d 549, 554-55 (2000); Commonwealth v. Christie, 98 S.W.3d 485, 491-92 (Ky.2002); State v. Whaley, 305 S.C. 138, 406 S.E.2d 369, 372 (1991); Nations v. State, 944 S.W.2d 795, 799 (Tex.Ct.App.1997); State v. Moon, 45 Wash.App. 692, 726 P.2d 1263, 1267-68 (1986).
Similar positions have been adopted in the federal courts. The Sixth Circuit was the first to hold that eyewitness expert testimony is sufficiently reliable to assist the jury. United States v. Smith, 736 F.2d 1103, 1107 (6th Cir.1984). The next year, the Third Circuit held that exclusion of expert testimony was an abuse of discretion when the conviction was based solely on an eyewitness identification. United States v. Downing, 753 F.2d 1224, 1226 (3rd Cir.1985). The Third Circuit further held *353 that the discretion of trial judges was limited in this area, and that rule 702 of the Federal Rules of Evidence “requires ... that expert testimony on eyewitness perception and memory be admitted at least in some circumstances.” Id. at 1232. The Fifth Circuit reached a similar conclusion in United States v. Moore and held that “in a case in which the sole testimony is casual eyewitness identification, expert testimony regarding the accuracy of that identification is admissible and properly may be encouraged.” 786 F.2d 1308,1313 (5th Cir.1986).
In short, a growing number of courts have recognized that eyewitness expert testimony is both reliable and helpful to the jury....
Clopten, 223 P.3d at 1111-12 (¶¶ 26-29) (footnotes omitted).
¶ 226. The Clopten Court held that “the testimony of a qualified expert regarding factors that have been shown to contribute to inaccurate eyewitness identifications should be admitted whenever it meets the requirements of rule 702 of the Utah Rules of Evidence.” Id. at 1112 (¶ 30). I agree with the majority in that expert testimony on the subject of eyewitness identification can be admissible at the sound discretion of our trial judges. Such testimony will not be appropriate in all cases and must still satisfy the standards of Rule 702, Daubert, and McLemore.
¶227. I would hold that the proposed expert testimony of Dr. Neuschatz reflected in the record before us meets our standards for admissibility under Daubert and would have been helpful to the jury. As discussed above, his opinions also are relevant under Rule 401. “Absent other grounds to exclude, an expert’s testimony is presumptively admissible when relevant and reliable.” Gillett v. State, 56 So.3d 469, 495 (¶ 65) (Miss.2010) (quoting McLemore, 863 So.2d at 39.) Without the benefit of a full Daubert analysis, the trial court reached the conclusion that “other grounds to exclude” existed, and the majority largely relies on the other grounds.
¶ 228. However, I do not view the concerns raised by the majority concerning potential factual discrepancies between Dr. Neuschatz’s understanding of Josh’s testimony and Josh’s actual testimony to be of a nature to render Dr. Neuschatz’s testimony globally inadmissible. The primary factual basis for Dr. Neuschatz’s opinions lies in the data gathered during years of study, and the prosecution may use discrepancies such as those raised by the majority and Presiding Justice Randolph in cross-examination. See Gillett v. State, 56 So.3d 469, 495 (¶ 65) (Miss.2010) (“Vigorous cross-examination, presentations of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.”) (quoting McLe-more, 863 So.2d at 36). In Gillett, the State offered expert testimony regarding DNA testing. Gillett, 56 So.3d at 493 (¶ 55). The defense attacked the reliability of the underlying testing via its own expert testimony and claimed that because the State’s expert used red-topped tubes, which do not contain a preservative which prevents blood from clotting or otherwise deteriorating, instead of purple-topped tubes, which do contain the preservative, his opinions were not reliable. Id. at 494 (¶ 58). The defense expert testified that samples from the red-topped tubes behaved in an unexpected way and that the procedure involving the use of red-topped tubes had not been verified. Id. The Gil-lett Court held that the problems with the State expert’s procedure would not prohibit admission of his opinions and would have been properly addressed by the defense on cross-examination. Id. at 495 (¶ 65). I view the factual issues with Dr. Neus- *354 chatz’s opinions highlighted by the majority in a similar light. The majority writes that Dr. Neuschatz demonstrated “an incorrect and incomplete understanding of’ and “total lack of expertise about Josh’s memory problems.” However, as the majority notes later in its opinion, Josh denied having memory problems when he testified. There exists an inherent contradiction in holding that Dr. Neuschatz’s testimony should have been excluded due to a witness’s memory problem that the witness himself denied existed, but sousing out such factual contradictions is the role of a jury. The jury should have been the sole arbiter of the credibility of Josh’s testimony regarding the non-existence of any memory problems. Butler v. State, 102 So.3d 260, 268 (¶22) (Miss.2012). For the foregoing reasons, I would reverse the trial court for failing to analyze properly the admissibility of Dr. Neuschatz’s opinions under Daubert and McLemore.

B. Reliability of Photographic Lineups

¶229. In addition, Corrothers argues that the trial court erred in not allowing Dr. Neuschatz to testify regarding the reliability of the photo lineups. Part of Dr. Neuschatz’s proffered testimony included his opinion on the suggestive nature of photo lineups in general. Dr. Neuschatz would have given his opinion about the suggestiveness of the lineup used in this case, but he would not have opined as to whether Josh’s identification was accurate, as that would have been outside his personal knowledge.
¶ 230. Dr. Neuschatz said that the Department of Justice has established four guidelines for compiling and administering lineups: (1) the person administering the lineup should not know the identity of the suspect; (2) a statement should be read to the witness to indicate that the suspect may or may not be in the lineup; (3) the lineup administrator should take “confidence” statements from the witness after the witness makes a choice; and (4) the suspect should not stand out based on the witness’s description of the suspect.
¶ 231. It was Dr. Neuschatz’s opinion that the photographic lineup shown to Josh and Tonya violated three of the four guidelines. First, the officers who administered the lineup knew who the suspect was; although, nothing in the record suggests any impropriety by the officers. Second, the officers did not take confidence statements from Josh after he identified Corrothers. Third, it was Dr. Neuschatz’s opinion that Corrothers’s photo stood out from the others because Corrothers was wearing a white shirt, not an MDOC jumpsuit like the others; he said the photo was problematic because the witnesses previously had said the shooter was wearing a white shirt.
¶232. Finally, Dr. Neuschatz testified that a suggestive lineup that takes place out of court could affect the reliability of an in-court identification. He explained that the witness might suffer from “commitment effect,” whereby the witness feels he must commit to the identification made in the photo lineup when he sees that person in court. Another problem is “post-event suggestion,” where the witness may remember a face seen in the photo lineup rather than the face seen during the crime.
¶ 233. Once again, whether Dr. Neus-chatz should have been allowed to testify is controlled by Mississippi Rule of Evidence 702 and Daubert and McLemore; however, the trial court here failed to apply these standards as required. The full analysis of the relevance and reliability of Dr. Neus-chatz’s proposed testimony regarding the accuracy of eyewitness identifications and his research in the field was covered in the previous section, thus it is unnecessary to *355 repeat here. Dr. Neuschatz’s use of the Department of Justice guidelines for administering lineups is strong evidence of the reliability of his testimony regarding photo lineups. With that said, the testimony must pass Mississippi Rule of Evidence 403, which states, “[relevant] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....” Miss. R. Evid. 403. The jury could be confused or mislead if, on the one hand, the trial court determines, as was done here, that the identifications are legally reliable and the lineups are not impermissibly suggestive, and, on the other hand, Dr. Neuschatz is allowed to testify as to the suggestiveness and unreliability of lineups in general as well as the specific lineup used in this, case.
¶234. The trial court improperly excluded Dr. Neuschatz’s expert testimony regarding the accuracy of eyewitness identifications on the basis that it would not aid the jury, and, in so doing, the court also excluded Dr. Neuschatz’s testimony pertaining to the suggestive nature of photographic lineups. While the lineup testimony, having been lumped together with the remainder of Dr. Neuschatz’s testimony, was excluded for an improper reason, the trial court conceivably could have excluded the lineup testimony within its discretion as confusing the issues or misleading the jury under Rule 403. However, the trial court made no on-the-record analysis of Rule 403; thus, its decision on the issue should be reversed and remanded for a determination of whether the lineup testimony is separately admissible from the remainder of Dr. Neuschatz’s testimony.
¶235. In summation, the trial court erred by refusing to allow Dr. Neuschatz’s testimony on the science of eyewitness identification without applying the correct legal standard for determining admissibility. Therefore, I would reverse Corroth-ers’s convictions and sentences and remand the case for a new trial.
DICKINSON, P.J., JOINS THIS OPINION. KITCHENS AND KING, JJ., JOIN THIS OPINION IN PART.

APPENDIX

DEATH CASES AFFIRMED BY THIS COURT

Jason Lee Keller v. State, 138 So.3d 817 (Miss.2014).
Leslie Galloway III v. State, 122 So.3d 614 (Miss.2013).
Bobby Batiste v. State, 121 So.3d 808 (Miss.2013).
Roger Lee Gillett v. State, 56 So.3d 469 (Miss.2010).
Moffett v. State, 49 So.3d 1073 (Miss.2010).
Pitchford v. State, 45 So.3d 216 (Miss.2010).
Goff v. State, 14 So.3d 625 (Miss.2009).
Wilson v. State, 21 So.3d 572 (Miss.2009).
Chamberlin v. State, 989 So.2d 320 (Miss.2008).
Loden v. State, 971 So.2d 548 (Miss.2007).
King v. State, 960 So.2d 413 (Miss.2007).
Bennett v. State, 933 So.2d 930 (Miss.2006).
Havard v. State, 928 So.2d 771 (Miss.2006).
Spicer v. State, 921 So.2d 292 (Miss.2006).
Hodges v. State, 912 So.2d 730 (Miss.2005).
Walker v. State, 913 So.2d 198 (Miss.2005).
*356 Le v. State, 913 So.2d 913 (Miss.2005).
Brown v. State, 890 So.2d 901 (Miss.2004).
Powers v. State, 883 So.2d 20 (Miss.2004).
Branch v. State, 882 So.2d 36 (Miss.2004).
Scott v. State, 878 So.2d 933 (Miss.2004).
Lynch v. State, 877 So.2d 1254 (Miss.2004).
Dycus v. State, 875 So.2d 140 (Miss.2004).
Byrom v. State, 863 So.2d 836 (Miss.2003).
Howell v. State, 860 So.2d 704 (Miss.2003).
Howard v. State, 853 So.2d 781 (Miss.2003).
Walker v. State, 815 So.2d 1209 (Miss.2002). *following remand.
Bishop v. State, 812 So.2d 934 (Miss.2002).
Stevens v. State, 806 So.2d 1031 (Miss.2002).
Grayson v. State, 806 So.2d 241 (Miss.2002).
Knox v. State, 805 So.2d 527 (Miss.2002).
■Simmons v. State, 805 So.2d 452 (Miss. 2002).
Berry v. State, 802 So.2d 1033 (Miss.2001).
Snow v. State, 800 So.2d 472 (Miss.2001).
Mitchell v. State, 792 So.2d 192 (Miss.2001).
Puckett v. State, 788 So.2d 752. (Miss.2001). * following remand.
Goodin v. State, 787 So.2d 639 (Miss.2001).
Jordan v. State, 786 So.2d 987 (Miss.2001).
Manning v. State, 765 So.2d 516 (Miss.2000). *following remand.
Eskridge v. State, 765 So.2d 508 (Miss.2000).
McGilberry v. State, 741 So.2d 894 (Miss.1999).
Puckett v. State, 737 So.2d 322 (Miss.1999). *remanded for Batson hearing.
Manning v. State, 735 So.2d 323 (Miss.1999). *remanded for Batson hearing.
Hughes v. State, 735 So.2d 238 (Miss.1999).
Turner v. State, 732 So.2d 937 (Miss.1999).
Smith v. State, 729 So.2d 1191 (Miss.1998).
Bums v. State, 729 So.2d 203 (Miss.1998).
Jordan v. State, 728 So.2d 1088 (Miss.1998).
Gray v. State, 728 So.2d 36 (Miss.1998).
Manning v. State, 726 So.2d 1152 (Miss.1998).
Woodward v. State, 726 So.2d 524 (Miss.1997).
Bell v. State, 725 So.2d 836 (Miss.1998).
Evans v. State, 725 So.2d 613 (Miss.1997).
Brewer v. State, 725 So.2d 106 (Miss.1998).
Crawford v. State, 716 So.2d 1028 (Miss.1998).
Doss v. State, 709 So.2d 369 (Miss.1996).
Underwood v. State, 708 So.2d 18 (Miss.1998).
Holland v. State, 705 So.2d 307 (Miss.1997).
Wells v. State, 698 So.2d 497 (Miss.1997).
*357 Wilcher v. State, 697 So.2d 1087 (Miss.1997).
Wiley v. State, 691 So.2d 959 (Miss.1997).
Brown v. State, 690 So.2d 276 (Miss.1996).
Simon v. State, 688 So.2d 791 (Miss.1997).
Jackson v. State, 684 So.2d 1213 (Miss.1996).
Williams v. State, 684 So.2d 1179 (Miss.1996).
Davis v. State, 684 So.2d 643 (Miss.1996).
Taylor v. State, 682 So.2d 359 (Miss.1996).
Brown v. State, 682 So.2d 340 (Miss.1996).
Blue v. State, 674 So.2d 1184 (Miss.1996).
Holly v. State, 671 So.2d 32 (Miss.1996).
Walker v. State, 671 So.2d 581 (Miss.1995).
Russell v. State, 670 So.2d 816 (Miss.1995).
Ballenger v. State, 667 So.2d 1242 (Miss.1995).
Davis v. State, 660 So.2d 1228 (Miss.1995).
Carr v. State, 655 So.2d 824 (Miss.1995).
Mack v. State, 650 So.2d 1289 (Miss.1994).
Chase v. State, 645 So.2d 829 (Miss.1994).
Foster v. State, 639 So.2d 1263 (Miss.1994).
Conner v. State, 632 So.2d 1239 (Miss.1993).
Hansen v. State, 592 So.2d 114 (Miss.1991).
* Shell v. State, 554 So.2d 887 (Miss.1989); Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding; Shell v. State, 595 So.2d 1323 (Miss.1992) remanding for new sentencing hearing.
Davis v. State, 551 So.2d 165 (Miss.1989).
Minnick v. State, 551 So.2d 77 (Miss.1989).
* Pinkney v. State, 538 So.2d 329 (Miss.1989); Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding; Pinkney v. State, 602 So.2d 1177 (Miss.1992) remanding for new sentencing hearing.
* Clemons v. State, 535 So.2d 1354 (Miss.1988); Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding; Clemons v. State, 593 So.2d 1004 (Miss.1992) remanding for new sentencing hearing.
Woodward v. State, 533 So.2d 418 (Miss.1988).
Nixon v. State, 533 So.2d 1078 (Miss.1987).
Cole v. State, 525 So.2d 365 (Miss.1987).
Lockett v. State, 517 So.2d 1346 (Miss.1987).
Lockett v. State, 517 So.2d 1317 (Miss.1987).
Faraga v. State, 514 So.2d 295 (Miss.1987).
* Jones v. State, 517 So.2d 1295 (Miss.1987); Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding; Jones v. State, 602 So.2d 1170 (Miss.1992) remanding for new sentencing hearing.
Wiley v. State, 484 So.2d 339 (Miss.1986).
*358 Johnson v. State, 477 So.2d 196 (Miss.1985).
Gray v. State, 472 So.2d 409 (Miss.1985).
Cabello v. State, 471 So.2d 332 (Miss.1985).
Jordan v. State, 464 So.2d 475 (Miss.1985).
Wilcher v. State, 455 So.2d 727 (Miss.1984).
Billiot v. State, 454 So.2d 445 (Miss.1984).
Stringer v. State, 454 So.2d 468 (Miss.1984).
Dufour v. State, 453 So.2d 337 (Miss.1984).
Neal v. State, 451 So.2d 743 (Miss.1984).
Booker v. State, 449 So.2d 209 (Miss.1984).
Wilcher v. State, 448 So.2d 927 (Miss.1984).
Caldwell v. State, 443 So.2d 806 (Miss.1983).
Irving v. State, 441 So.2d 846 (Miss.1983).
Tokman v. State, 435 So.2d 664 (Miss.1983).
Leatherwood v. State, 435 So.2d 645 (Miss.1983).
Hill v. State, 432 So.2d 427 (Miss.1983).
Pruett v. State, 431 So.2d 1101 (Miss.1983).
Gilliard v. State, 428 So.2d 576 (Miss.1983).
Evans v. State, 422 So.2d 737 (Miss.1982).
King v. State, 421 So.2d 1009 (Miss.1982).
Wheat v. State, 420 So.2d 229 (Miss.1982).
Smith v. State, 419 So.2d 563 (Miss.1982).
Johnson v. State, 416 So.2d 383 (Miss.1982).
Edwards v. State, 413 So.2d 1007 (Miss.1982).
Bullock v. State, 391 So.2d 601 (Miss.1980).
Reddix v. State, 381 So.2d 999 (Miss.1980).
Jones v. State, 381 So.2d 983 (Miss.1980).
Culberson v. State, 379 So.2d 499 (Miss.1979).
Gray v. State, 375 So.2d 994 (Miss.1979).
Jordan v. State, 365 So.2d 1198 (Miss.1978).
Voyles v. State, 362 So.2d 1236 (Miss.1978).
Irving v. State, 361 So.2d 1360 (Miss.1978).
Washington v. State, 361 So.2d 61 (Miss.1978).
Bell v. State, 360 So.2d 1206 (Miss.1978).
* Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.
DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCING PHASE
Byrom v. State, 2014-DR-00230-SCT (April 3, 2014) (order).
Ross v. State, 954 So.2d 968 (Miss.2007).
Flowers v. State, 947 So.2d 910 (Miss.2006).
Flowers v. State, 842 So.2d 531 (Miss.2003).
Randall v. State, 806 So.2d 185 (Miss.2002).
*359 Flowers v. State, 773 So.2d 309 (Miss.2000).
Edwards v. State, 737 So.2d 275 (Miss.1999).
Smith v. State, 733 So.2d 793 (Miss.1999).
Porter v. State, 732 So.2d 899 (Miss.1999).
Kolberg v. State, 704 So.2d 1307 (Miss.1997).
Snelson v. State, 704 So.2d 452 (Miss.1997).
Fuselier v. State, 702 So.2d 388 (Miss.1997).
Howard v. State, 701 So.2d 274 (Miss.1997).
Lester v. State, 692 So.2d 755 (Miss.1997).
Hunter v. State, 684 So.2d 625 (Miss.1996).
Lanier v. State, 684 So.2d 93 (Miss.1996).
Giles v. State, 650 So.2d 846 (Miss.1995).
Duplantis v. State, 644 So.2d 1235 (Miss.1994).
Harrison v. State, 635 So.2d 894 (Miss.1994).
Butler v. State, 608 So.2d 314 (Miss.1992).
Jenkins v. State, 607 So.2d 1171 (Miss.1992).
Abram v. State, 606 So.2d 1015 (Miss.1992).
Balfour v. State, 598 So.2d 731 (Miss.1992).
Griffin v. State, 557 So.2d 542 (Miss.1990).
Bevill v. State, 556 So.2d 699 (Miss.1990).
West v. State, 553 So.2d 8 (Miss.1989).
Leatherwood v. State, 548 So.2d 389 (Miss.1989).
Mease v. State, 539 So.2d 1324 (Miss.1989).
Houston v. State, 531 So.2d 598 (Miss.1988).
West v. State, 519 So.2d 418 (Miss.1988).
Davis v. State, 512 So.2d 1291 (Miss.1987).
Williamson v. State, 512 So.2d 868 (Miss.1987).
Foster v. State, 508 So.2d 1111 (Miss.1987).
Smith v. State, 499 So.2d 750 (Miss.1986).
West v. State, 485 So.2d 681 (Miss.1985).
Fisher v. State, 481 So.2d 203 (Miss.1985).
Johnson v. State, 476 So.2d 1195 (Miss.1985).
Fuselier v. State, 468 So.2d 45 (Miss.1985).
West v. State, 463 So.2d 1048 (Miss.1985).
Jones v. State, 461 So.2d 686 (Miss.1984).
Moffett v. State, 456 So.2d 714 (Miss.1984).
Lanier v. State, 450 So.2d 69 (Miss.1984).
Laney v. State, 421 So.2d 1216 (Miss.1982).
DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT
Reddix v. State, 547 So.2d 792 (Miss.1989).
*360 Wheeler v. State, 536 So.2d 1341 (Miss.1988).
White v. State, 532 So.2d 1207 (Miss.1988).
Bullock v. State, 525 So.2d 764 (Miss.1987).
Edwards v. State, 441 So.2d 84 (Miss.1983).
Dycus v. State, 440 So.2d 246 (Miss.1983).
Coleman v. State, 378 So.2d 640 (Miss.1979).
DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY
Fulgham v. State, 46 So.3d 315 (Miss.2010).
Rubenstein v. State, 941 So.2d 735 (Miss.2006).
King v. State, 784 So.2d 884 (Miss.2001).
Walker v. State, 740 So.2d 873 (Miss.1999).
Watts v. State, 733 So.2d 214 (Miss.1999).
West v. State, 725 So.2d 872 (Miss.1998).
Smith v. State, 724 So.2d 280 (Miss.1998).
Berry v. State, 703 So.2d 269 (Miss.1997).
Booker v. State, 699 So.2d 132 (Miss.1997).
Taylor v. State, 672 So.2d 1246 (Miss.1996).
* Shell v. State, 554 So.2d 887 (Miss.1989); Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding; Shell v. State, 595 So.2d 1323 (Miss.1992) remanding for new sentencing hearing.
* Pinkney v. State, 538 So.2d 329 (Miss.1989); Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding; Pinkney v. State, 602 So.2d 1177 (Miss.1992) remanding for new sentencing hearing.
* Clemons v. State, 535 So.2d 1354 (Miss.1988); Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding; Clemons v. State, 593 So.2d 1004 (Miss.1992) remanding for new sentencing hearing.
* Jones v. State, 517 So.2d 1295 (Miss.1987); Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding; Jones v. State, 602 So.2d 1170 (Miss.1992) remanding for new sentencing hearing.
Russell v. State, 607 So.2d 1107 (Miss.1992).
Holland v. State, 587 So.2d 848 (Miss.1991).
Willie v. State, 585 So.2d 660 (Miss.1991).
Ladner v. State, 584 So.2d 743 (Miss.1991).
Mackbee v. State, 575 So.2d 16 (Miss.1990).
Berry v. State, 575 So.2d 1 (Miss.1990).
Turner v. State, 573 So.2d 657 (Miss.1990).
State v. Tokman, 564 So.2d 1339 (Miss.1990).
Johnson v. State, 547 So.2d 59 (Miss.1989).
Williams v. State, 544 So.2d 782 (Miss.1989); sentence aff'd 684 So.2d 1179 (1996).
Lanier v. State, 533 So.2d 473 (Miss.1988).
Stringer v. State, 500 So.2d 928 (Miss.1986).
*361 Pinkton v. State, 481 So.2d 306 (Miss.1985).
Mhoon v. State, 464 So.2d 77 (Miss.1985).
Cannaday v. State, 455 So.2d 713 (Miss.1984).
Wiley v. State, 449 So.2d 756 (Miss.1984); resentencing affirmed, Wiley v. State, 484 So.2d 339 (Miss.1986); cert. denied, Wiley v. Mississippi, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 610 (1988); resentencing ordered, Wiley v. State, 635 So.2d 802 (Miss.1993) following writ of habeas corpus issued pursuant to Wiley v. Puckett, 969 F.2d 86, 105-106 (5th Cir.1992); resentencing affirmed.
Williams v. State, 445 So.2d 798 (Miss.1984). *Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing. (Revised June 25, 2014).

. Miss. Trartsp. Comm’n v. McLemore, 863 So.2d 31, 36 (¶ 13) (Miss.2003).

. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. For the foregoing reasons, I disagree with Presiding Justice Randolph’s conclusion that Dr. Neuschatz's testimony does not fit the facts of the case.

. When determining whether reversible error exists, we confine our review of the trial court’s decision to the facts and arguments we find in the record, because we can thereby confirm they were presented to the trial court for its consideration. See Adams v. Baptist Mem’l Hosp -DeSoto, Inc., 965 So.2d 652, 657 (¶ 25) (Miss.2007) ("This Court 'may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record.’ ”) (citing Shelton v. Kindred, 279 So.2d 642, 644 (Miss.1973)). In his opinion, Presiding Justice Randolph relies upon and analyzes evidence that, while cited in briefs, was not made part of the record or presented to the trial court, i.e., the article cited by Dr. Neus-chatz to support his uncontradicted testimony that his field of expertise is generally'accepted.

. In Moore, the Fifth Circuit upheld the exclusion of expert testimony regarding the reliability of eyewitness identifications in the case under review therein. However, the Moore Court hardly issued a blanket prohibition against it, writing:
*352 Expert testimony on eyewitness reliability is not simply a recitation of facts available through common knowledge. Indeed, the conclusions of the psychological studies are largely counter-intuitive, and serve to "explode common myths about an individual’s capacity for perception...." For example, it is commonly believed that the accuracy of a witness’ recollection increases with the certainty of the witness. In fact, the data reveal no correlation between witness certainty and accuracy. Similarly, it is commonly believed that witnesses remember better when they are under stress. The data indicate that the opposite is true. The studies also show that a group consensus among witnesses as to an alleged criminal’s identity is far more likely to be inaccurate than is an individual identification. This is because of the effect of the "feedback factor,” which serves to reinforce mistaken identifications. We therefore recognize that the admission of this type of testimony is proper, at least in some cases.
Moore, 786 F.2d at 1312 (emphasis added).